**State v. Johnson**
*[Cite as 5 AOA 273]*

*Case No. 88AP-761*
*Franklin County, (10th)*
*Decided August 7, 1990*

*Michael Miller, Prosecuting Attorney, and Joyce S. Anderson, for Appellee.*

*Randall M. Dana, Ohio Public Defender, George A. Lyons and Barbara A. Farnbacher, for Appellant.*

BOWMAN, J.

The bodies of Wanda Whigham and Marvin Swackhammer were discovered in their apartment on the evening of August 5, 1987. The coroner estimated that they had been dead for approximately twenty-four to thirty-six hours.

In their investigation of the murders, the police spoke with the decedents' neighbors, Steve and Betty Moore. Steve Moore initially stated that he was awakened by a loud thump on the wall between 3 a.m. and 4 a.m. on Monday, August 3; however, at trial, he testified that he was awakened by some sounds from the adjoining apartment early in the morning on Tuesday, August 4, when he heard several different thumps, and one really loud thump, on the wall. He also testified that later on Tuesday morning, he noticed that the window on the door of Marvin and Wanda's apartment was broken.

Steve's mother, Betty Moore, testified that around 3:30 am., on the morning of Tuesday, August 4, she heard things hitting the floor and something hit the wall in the apartment next door. Steve and his mother discussed the noises and, later Tuesday evening, Betty Moore looked in the window of Marvin and Wanda's apartment, but she did not notice any broken glass. Betty Moore testified that she last saw Marvin and Wanda alive on the evening of Monday, August 3.

The decedents' landlord, Fred Maloof, testified that he also saw the decedents around 4:00 pm. on Monday when lie went to inquire about their rent check. On August 5, when he returned to the apartment, he discovered the broken window, reached in, unlocked the deadbolt and opened the door. He then saw a body on the floor and thought the person was asleep, so he left. He also noticed an odor. It was after Betty Moore called Maloof about an odor that Maloof suggested she call the police and the bodies were discovered.

Based on evidence collected at the scene, including fingerprints and palm prints, appellant, Eddie Lee Johnson, was picked up by the police and interrogated. During the interrogation, and at trial, appellant denied responsibility for the deaths.

At trial, appellant testified that he had been at Marvin and Wanda's apartment early in the morning on Monday, August 3, and that while he and Wanda were having intercourse, Marvin came up behind him. Because appellant thought that Marvin was going to do something to him, he hit Marvin with the back of his hand. This caused Marvin to spin around, and as he fell, he tried unsuccessfully to grab onto a chair, but he stumbled and missed and ended up laying underneath a window. Appellant testified that Wanda then got upset, jumped on his back and scratched and hit him, so appellant hit her and she fell as well. Because appellant felt badly about his actions, he picked Wanda up off of the floor and tried to apologize to her and Marvin, but she

kicked him out of the apartment. Appellant testified that when he left the apartment, Marvin had on a T-shirt and his trousers, Wanda had on her underwear and bra and both of them were alive.

During the trial, appellant presented character witnesses who testified that he was not a violent person, and he also presented alibi witnesses who testified to his whereabouts at various times from August 2 to August 5.

The case was submitted to the jury with instructions on aggravated burglary, aggravated murder, involuntary manslaughter and murder. The jury found appellant guilty of murder in the death of Marvin and involuntary manslaughter in the death of Wanda. Appellant was found not guilty of the aggravated burglary charge. Appellant was sentenced to fifteen years to life on the murder charge and ten to twenty years on the involuntary manslaughter charge, which sentences were to run consecutively. Appellant now brings this appeal and asserts the following assignments of error:

"I. THE TRIAL COURT ABUSED IT'S DISCRETION AND VIOLATED APPELLANT'S RIGHT TO DUE PROCESS WHEN IT EXAMINED BUT DID NOT REPLACE A JUROR WHO ADMITTEDLY CONVERSED WITH THE DECEDENT'S SISTER OUTSIDE THE COURTROOM DURING APPELLANT'S TRIAL FOR AGGRAVATED MURDER. SAID ERROR CONTRAVENED THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION.

"II. THE STATE FAILED TO PRODUCE EVIDENCE WHICH WAS SUFFICIENT AS A MATTER OF LAW TO SUSTAIN APPELLANT'S CONVICTIONS. APPELLANT WAS THUS DEPRIVED OF HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.

"III. THE STATE PRESENTED INSUFFICIENT CIRCUMSTANTIAL EVIDENCE ON THE ELEMENT OF IDENTITY TO SUPPORT THE VERDICT, AS WELL AS INSUFFICIENT CIRCUMSTANTIAL EVIDENCE ON THE ELEMENT OF PURPOSE TO SUPPORT THE MURDER CONVICTION. THIS EVIDENCE WAS NOT TOTALLY INCONSISTENT WITH APPELLANT'S REASONABLE THEORY OF INNOCENCE. APPELLANT WAS THUS DEPRIVED OF HIS RIGHT TO DUE PROCESS, AS THERE WAS INSUFFICIENT CIRCUMSTANTIAL EVIDENCE TO SUPPORT THE VERDICT, IN CONTRAVENTION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.

"IV. APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL BY THE STATE'S FAILURE TO NARROW THE TIME FRAME IN WHICH THE OFFENSE WAS ALLEGED TO HAVE OCCURRED. THIS ERROR DEPRIVED APPELLANT OF HIS RIGHT TO DUE PROCESS OF LAW GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.

"V. THE TRIAL COURT ERRED TO THE MATERIAL PREJUDICE OF APPELLANT IN ADMITTING INTO EVIDENCE IN THE STATE'S CASE IN CHIEF TESTIMONY OF A PRIOR BAD ACT ALLEGEDLY COMMITTED BY APPELLANT. THE ERRONEOUS ADMISSION OF THIS EVIDENCE WAS IN CONTRAVENTION OF EVID. R. 403 AND 404, AND R.C. 2945.59 AND DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.

"VI. THE TRIAL COURT ERRED TO THE MATERIAL PREJUDICE OF APPELLANT IN ADMITTING INTO EVIDENCE TESTIMONY OF PRIOR BAD ACTS OF APPELLANT, BOTH ALLEGEDLY COMMITTED BY APPELLANT AND ACTUALLY COMMITTED BY APPELLANT, ON CROSS-EXAMINATION OF APPELLANT'S CHARACTER WITNESSES. THIS ERROR DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO

THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.

"VII. THE TRIAL COURT ERRED TO THE MATERIAL PREJUDICE OF APPELLANT IN PERMITTING IMPROPER CROSS-EXAMINATION OF APPELLANT REGARDING PRIOR BAD ACTS. SAID ERROR DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.

"VIII. INSTANCES OF PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT AND DURING THE TRIAL WERE IMPROPER AND PREJUDICIAL, AND DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL PURSUANT TO ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

"IX. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ITS INSTRUCTIONS TO THE JURY ON THE LESSER INCLUDED OFFENSES OF MURDER AND INVOLUNTARY MANSLAUGHTER. SAID ERROR DENIED APPELLANT OF HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.

"A. The trial court erred in instructing the jury on the lesser included offenses of murder and involuntary manslaughter as said instructions were not warranted by the evidence.

"B. Assuming, *arguendo*, the instructions on the lesser included offenses were warranted, the trial court's instructions were prejudicially erroneous.

"X. APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S NUMEROUS ERRONEOUS ACTS AND OMISSIONS, IN CONTRAVENTION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND

ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION."

In his first assignment of error, appellant asserts that the trial court abused its discretion when it examined, but did not replace, a juror who conversed with the decedent's sister outside the courtroom during the trial. During a recess in the trial, it was brought to the attention of the court that someone had been carrying on, or trying to carry on, a conversation with one of the jurors in the hall. The juror in question said that, although the woman spoke to him, she did not say anything about the case. The juror said that he did not know who she was and he did not know that she was Wanda's sister. Upon further inquiry, the juror stated that the woman asked him whether or not they were done for the day, or if they were supposed to go back into the courtroom or go home. Nothing whatsoever about the case was discussed. Appellant's counsel did not make any inquiries of the juror, nor did he request that the juror be replaced. Appellant now asserts that the trial court's not replacing this juror violated his right to due process.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a person accused of a state criminal violation shall be tried before a panel of fair and impartial jurors, *Duncan v. Louisiana* (1968), 391 U.S. 145, so that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence. *Patterson v. Colorado* (1907), 205 U.S. 454. Ohio recognizes the rule that a judgment will not be reversed because of the misconduct of a juror unless prejudice to the complaining party is shown. *State v. Kehn* (1977), 50 Ohio St. 2d 11, certiorari denied, *Kehn v. Ohio* (1977), 434 U.S. 858. Any communication or contact outside the courtroom or 'jury room about the matter at trial between a juror and another person, particularly if the person is one connected with one of the parties to the litigation, violates the juror's duty to limit his considerations to the evidence, arguments and law presented in open court. Any such activity is juror misconduct, a constitutional violation whether viewed under the Fourteenth Amendment to the United States Constitution or Section 10, Article I of the Ohio Constitution. *State v. King* (1983), 10 Ohio App. 3d 161. However, not all such conduct requires reversal.

In *King, supra*, the court stated, at 165-166:

"Not every instance of juror misconduct requires reversal. The misconduct must be prejudicial. While Ohio has not spoken directly to the

question of the burden of proof to demonstrate prejudice once the existence of juror misconduct has been established, we believe the better rule is that all juror misconduct is presumed to be Prejudicial, and the prevailing party (the state, in our case) has the burden to demonstrate that the misconduct was not prejudicial under the circumstances. This procedure is set forth in *Remmer v. United States* (1954), 347 U.S. 227, 229 (the conviction was of willful evasion of federal income taxes) as follows:

"'In a criminal case, any private communication, Il contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.'"

This court finds that the presumption of prejudice was rebutted in this case. The trial court not only interviewed the juror in question, but also gave the prosecution and defense counsel an opportunity to interview him as well. The trial court came to the factual conclusion, which is supported by the record, that after hearing the juror testify as to his contact with the decedent's sister, the juror was honest and sincere, and that he did not obtain any information that would violate his duty to limit his considerations to the evidence, arguments and law presented in open court. The trial court has discretion to determine when a reportedly disabled juror should be replaced by the appropriate alternate before deliberations begin, *State v. Shields* (1984), 15 Ohio App. 3d 112, and absent a record showing that the court abused that discretion, this court will presume regularity. *Beach v. Sweeney* (1958), 167 Ohio St. 477. Appellant has failed to demonstrate that the court acted unreasonably or that appellant was prejudiced by the court's action. Accordingly, appellant's first assignment of error is overruled.

In his fourth assignment of error, appellant asserts that the state's failure to narrow the time frame in which the offense was alleged to have occurred deprived him of his right to a fair trial and due process of law because the absence of a specific time period prejudiced his ability to fairly defend himself.

Appellant contends that his defense of alibi to some, but not all, of the time intervals set forth in the indictment, the period of time between August 3, 1987 through August 5, 1987, made the date and time of the alleged criminal conduct critical. Appellant contends that the time period is particularly important because appellant admitted to being present at the scene, and involved in an altercation with the decedents, during part of the time set forth in the indictment, on August 3, 1987. Appellant asserts that, had the time frame been properly narrowed to August 4 and August 5, 1987, the time frame in which Dr. Fardal and Dr. Tate determined the deaths had occurred, rather than left as it was, to include August 3, 1987, then the outcome of the trial clearly would have been otherwise.

In *State v. Sellards* (1985), 17 Ohio St. 3d 169, the court stated that the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges. In addition, specification as to date and time would not ordinarily be required in a bill of particulars since such information does not describe particular conduct, but instead only describes when that conduct was alleged to have occurred, knowledge of which is generally irrelevant to the preparation of a defense. However, if, after filing the indictment and the bill of particulars, the state becomes aware of more specific information, it must provide the information to the defendant. Where the inability to produce a specific time or date when the criminal conduct occurred is without material detriment to the preparation of a defense, the omission is without prejudice and without constitutional consequence. See, also, *State v. Gingell* (1982), 7 Ohio App. 3d 364.

The record in this case does not indicate that the failure to provide appellant with a more specific date was a material detriment to the preparation of his defense. Although the indictment and the bill of particulars, which appellant requested and which were filed by the prosecution, both stated that the dates of the crime were August 3, 4 and 5, 1987, this court does not find that the time frame was so vague and nebulous as to prevent appellant from presenting his alibi-defense. Appellant admitted that he was in Marvin and Wanda's apartment on August 3, and but for his testimony, and the opening statement, no other evidence in the record indicates that he was anywhere near the decedents or their apartment on more than on occasion during the three days in question. This case is a far cry from *Sellards, supra,* and *Gingell, supra,* where an

indictment alleging that an offense occurred over numerous months was found to be specific enough to not be detrimental to the defendant in the preparation of his defense. In this case, appellant only needed to account for three days, as opposed to accounting for months. Furthermore, the testimony at trial did not narrow the time frame and did not vary from the time given in the indictment and bill of particulars, except to establish that the murder occurred between the evening of August 3, and the evening of August 5. See *Sellards*. In fact, both coroners testified that the time frame was vague because of the effect the heat had on the bodies and considering the bodies were in a closed apartment in the heat of August. In addition, even though appellant gave an alibi for some of the time frame involved, it was a question of fact for the jury to determine whether or not to believe appellant's story or to find otherwise. Accordingly, this court finds that the state provided its best estimate of the time of death and that the time frame was sufficiently narrow and specific and appellant's fourth assignment of error is overruled.

Appellant's fifth, sixth and seventh assignments of error are related and will be considered together. These assignments of error address the trial court's admitting into evidence testimony of prior bad acts allegedly committed by appellant. This evidence and testimony was admitted in the state's case in chief, on cross-examination of appellant's character witnesses and during cross-examination of appellant himself.

Evidence of previous or subsequent acts of a defendant which are unrelated to the charge for which the defendant is being tried are generally inadmissible. *State v. Thompson* (1981), 66 Ohio St. 2d 496. The exceptions to the admissions of other acts are outlined in Evid. R. 404(B), which provides:

"*** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The exceptions listed in Evid. R. 404(B) are to be strictly construed against the state and to be conservatively applied by a trial court. *State v. DeMarco* (1987), 31 Ohio St. 3d 191.

In *State v. Moore* (1948), 149 Ohio St. 226, the court held that the like acts or other acts which may be shown against an accused in a criminal case are acts of character so related to the offense for which the accused is on trial that they have a logical connection therewith and may reasonably disclose a motive or purpose for the commission of such offense. Therefore, evidence which tends to show that an accused has committed another crime, wrong, or act, wholly independent of the offense for which he is on trial, is generally inadmissible. *State v. Mann* (1985), 19 II Ohio St. 3d 34. See, also, *State v. Curry* (1975), 43 Ohio St. 2d 66.

In *State v. Matthews* (1984), 14 Ohio App. 3d 440, the court stated that for other acts testimony to be relevant, the testimony must tend to make the existence of any fact that is of consequence more probable or less probable than it would be without the evidence. See, also, Evid. R.401. Even if the evidence is relevant, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury, or confusion of the issues. See, also, Evid. R. 403(A).

In this case, one of the prior bad acts which was introduced into evidence through inadmissible hearsay evidence was the accusation that appellant had previously hit Marvin over the head with a motorcycle helmet, causing him injuries. This issue first arose on the direct examination of Detective Clarence Sorrell who testified:

"Q. Now, did you determine whether or not Wanda Whigham and Marvin Swackhammer knew an individual by the name of Eddie Lee Johnson?

"A. At this particular evening we were able to get a description of a subject who was later to match Mr. Johnson.

"Q. Did it have anything to do with the type of vehicle he drove?

"A. Yes, sir, it did.

"Q. What was that?

"A. He rode -- it was a black gentleman who rode a motorcycle and had been seen frequenting Wanda Whigham's apartment on occasion.

"Q. Now, Detective, did you also determine whether or not Mr. Swackhammer had been in the hospital at all lately?

"A. Yes, sir, he had. We were told he had had problems in the neighborhood, and had been either robbed or injured out of an incident. And our investigation took us to the nearest hospital being Mount Carmel West Hospital where we determined that in June of '87 he had been to that location where he had been at that time *assaulted by an unidentified subject at that time.*

"Q. And what kind of weapon was used?

"A. A motorcycle helmet, sir.

"Q. Was he struck in the head?

"A. Yes, sir.

"Q. Was that individual black or white?

"A. Black.

"Q. That was in June of '87?

"A. Yes, sir.

"Q. And did you obtain the hospital records from that?

"A. Yes, sir, we did." (Emphasis added.) (Tr. 299-300.)

Thereafter, Detective Charles Womeldorf testified over appellant's objection that he had statements and evidence that appellant had struck Marvin with a motorcycle helmet. In addition, Crystal McDonald testified that Marvin told her that appellant hit him on the head with a helmet and that he had gone to the hospital to receive treatment. All of this evidence was admitted during the state's case in chief.

During appellant's case, various character witnesses were questioned on cross-examination as to whether it would be out of character for appellant to hit an old man over the head with a motorcycle helmet and whether the witnesses' opinion of appellant would change if the witness knew that he had hit an old man over *the* head with a motorcycle helmet. They were also asked whether or not their opinion of appellant would change if the witness was aware of a 1984 and 1985 conviction for drug abuse and possession of drugs, and a 1975 conviction for criminal damaging and assault.

In addition, appellant testified on direct examination that he never struck Marvin with a helmet and on cross-examination, he testified that, if Marvin told one of his neighbors that he hit Marvin over the head with a motorcycle helmet, Marvin would be lying. Appellant was also cross-examined about threatening police officers and being drunk and disorderly in a bar in 1977.

Although defense counsel objected to one inquiry regarding the motorcycle helmet incident and argued against the prosecution's cross-examining various witnesses on appellant's prior records, there were numerous instances where an objection was not made when these issues came into evidence. Consequently, since counsel did not object to the conduct which is now alleged to be error, the allegation must rise to the level of plain error. See Crim. R. 52(B). A court should take notice of plain error only in exceptional circumstances when it is necessary to avoid a

miscarriage of justice. *State v. Long* (1978), 53 Ohio St. 2d 91. Crim. R. 52(B) is violated only when, but for the error, the outcome of the trial clearly would have been different. *Long, supra.* The standard for plain error is whether substantial rights of the accused are so adversely affected as to undermine the fairness of the guilt determining process. *State v. Swanson* (1984), 16 Ohio App. 3d 375.

This court finds that the trial court erred and abused its discretion in admitting the other acts testimony and evidence which was totally irrelevant to the charge at hand. Given the paucity of evidence to show that appellant was the perpetrator of the crimes at issue in this case, the minimal probative value of the evidence was substantially outweighed by the danger of unfair prejudice to appellant. The evidence condemned appellant, not necessarily because he was believed guilty of the present charges, but because it might be inferred that appellant had previously harmed Marvin and because it inferred that, as a result of his previous convictions, appellant was a bad person and had a criminal mind. Consequently, the admission of this testimony confused the issue at trial.

The evidence regarding the motorcycle helmet incident was inadmissible because the state did not produce sufficient evidence to identify appellant as the perpetrator of this act, except through inadmissible hearsay. In order for evidence of other bad acts to be admissible, there must be substantial evidence that the accused committed the other bad act. *State v. Carter* (1971), 26 Ohio St. 2d 79. In order to prove identity by the use of other crimes, the evidence must tend to show the other crimes are relevant to the offense in issue. *Curry, supra.* The evidence is relevant if the prior acts are within a period reasonably near the offense and a similar scheme, plan or system was utilized to commit both the prior offense and the one at issue. *State v. Harvill* (1984), 15 Ohio App. 3d 94. Even if relevant, evidence of prior crimes must be excluded if the probative value is outweighed by the prejudicial impact on the defendant. *Mann, supra.* The purpose of the evidence cannot be to merely prove the criminal character of the defendant. Instead, evidence is probative when it indicates that essentially the same plan, system or method has been followed.

With regard to cross-examining appellant's character witnesses, Evid. R. 608(B) permits inquiry into particular instances of conduct, although not the subject of criminal conviction.

In *State v. Williams* (1981), 1 Ohio App. 3d 156, the court stated that effective cross-examination demands that some allowance De made for going into matters of this kind. However, because the potential for abuse is high through unfair prejudice, confusion of issues, and misleading the jury, safeguards are erected in the form of requiring that the instances inquired into must be clearly probative of truthfulness or untruthfulness. The purpose in allowing cross-examination regarding specific instances of conduct is to test the credibility of the witness. Such testimony tends to show either that the witness is unfamiliar with the reputation concerning which he has testified, or that his standards of what constitutes good repute are unsound, provided a proper foundation of the prior conduct exists. *State v. Elliott* (1971), 25 Ohio St. 2d 249, vacated in part on other grounds, *Elliott v. Ohio* (1972), 408 U.S. 939. Further, a cross-examiner may only ask a question if the examiner has a good-faith belief that a factual predicate for the question exists. *State v. Gillard* (1988), 40 Ohio St. 3d 226, certiorari denied, *Gillard v. Ohio* (1989), 106 L.Ed. 2d 608, 109 S.Ct. 3263. In *State v. Howard* (1978), 57 Ohio App. 2d 1, the court stated:

"*** It has further been ruled that a character witness who denies having heard any report of the accused's having done certain things may not be asked to suppose the accused had done those things and relate whether, after the supposition, his opinion of the defendant would be different, for such a question calls for an opinion upon a hypothetical state of facts not in evidence. When such questions are asked, they are an abuse of the limited privilege of cross-examination of character witnesses and are, particularly where an affirmative answer is elicited, held to be reversible error. ***"

The prosecutions' cross-examination of appellant's character witnesses clearly exceeded the proper scope of cross-examination and the trial court erred in not properly limiting the cross-examination to those acts which were relevant to the crimes with which appellant was charged and for which a proper foundation was laid.

Based on the foregoing, this court finds that the trial court erred and committed plain error in admitting the prior bad act testimony in the state's case in chief, in allowing cross-examination of appellant's character witnesses and in cross-examining appellant as to other instances of criminal conduct. Appellant was prejudiced by the admission of this testimony and, consequent-

ly, his fifth, sixth and seventh assignments of error are sustained.

In his eighth assignment of error, appellant asserts that he was deprived of his right to a fair trial because of instances of prosecutorial misconduct during closing argument and during the trial. Specifically, appellant asserts that the state repeatedly argued points beyond the evidence in the record, expressed personal opinions to the jury, and called defense witnesses weak, pitiful and unworthy of belief.

In *State v. Smith* (1984), 14 Ohio St. 3d 13, the court stated that the test regarding prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the substantive rights of the defendant. See, also, *United States v. Dorr* (C.A.5, 1981), 636 F. 2d 117. In *State v. Maurer* (1984), 15 Ohio St. 3d 239, certiorari denied, *Maurer v. Ohio* (1985), 472 U.S. 1012, the court stated that prosecutors are granted wide latitude in closing argument and the affect of any prosecutorial misconduct must be considered in light of the whole case. Furthermore, in *State v. Stephens* (1970), 24 Ohio St. 2d 76, the court stated that in the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn from the evidence. However, prosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused and they may not elude to matters not supported by admissible evidence. *State v. Lott* (1990), 51 Ohio St. 3d 160. See, also, *State v. Liberatore* (1982), 69 Ohio it. 2d 583.

This court finds that, although many of the prosecutor's remarks were improper, this court does not consider the remarks, standing alone, to have prejudiced appellant or to have risen to the level of plain error. See, for example, *State v. Rahman* (1986), 23 Ohio St. 3d 146. Statements made during closing arguments are not evidence before the court, but are summations of the evidence that each side has established and that each side has failed to establish. Where references to matters outside the record occur, and those references are short, oblique or are justified as a reply to defense arguments, and there is no contemporaneous objection, there is no prejudicial error. *State v. Watson* (1969), 20 Ohio App. 2d 115.

Appellant also contends that he was denied a fair trial because of the prosecutor's behavior at trial when questioning witnesses, and especially when questioning appellant because the entire cross-examination of appellant was argumentative and improper.

The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives appellant of a fair trial. *State v. Apanovitch* (1987), 33 Ohio St. 3d 19. In this case, the prosecutor embarked on and embraced a pattern of repeated or egregious abuse of examination or cross-examination, and many of his questions were asked with the knowledge that there was no basis or foundation for them. However, because this court is remanding this case for a new trial, this court declines to find that the improper questioning constitutes plain error which denied appellant a fair trial. In addition, given the fact that much of the evidence surrounding the prosecutor's misconduct should not have come into evidence in the first place, this court is certain that the prosecutor's conduct will not be repeated. Accordingly, appellant's eighth assignment of error is overruled.

In his ninth assignment of error, appellant asserts that the trial court erred in instructing the jury on the lesser included offenses of murder and involuntary manslaughter because the instructions were not warranted by the evidence.

In *State v. Wilkins* (1980), 64 Ohio 5t. 2d 382, the court clarified the rule regarding when a lesser included offense instruction is required where the accused presents a complete defense and stated:

"If the evidence adduced on behalf of the defense is such that if accepted by the trier of fact it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted to consider a lesser included offense unless the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense.

"The persuasiveness of the evidence regarding the lesser included offense is irrelevant. If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given. The evidence must be considered in the light most favorable to defendant."

Appellant asserts that there is no reasonable view of the evidence, when viewed in the light most favorable to appellant, that supports a finding against the state and for appellant on one or more of the elements of aggravated murder and for the state and against the accused on the remaining elements which, by themselves, would sustain convictions for murder and involuntary manslaughter. Accordingly, appellant asserts that the jury reached a compromise verdict and thus dickered away appellant's liberty. See *State v. Loudermill* (1965), 2 Ohio St. 2d 79.

This court disagrees. The trial court properly instructed the jury on murder and involuntary manslaughter. Given the evidence, the jury could have reasonably found that appellant purposefully caused the death of Marvin, thus supporting their convicting appellant of the murder of Marvin. In addition, the evidence supports the jury's convicting of appellant of involuntary manslaughter for the death of Wanda. Involuntary manslaughter is defined as causing the death of another as a proximate result of the offender's committing or attempting to commit a felony. R.C. 2903.04(A). In this case, it was reasonable for the jury to determine that appellant caused the death of Wanda as a proximate result of appellant's murdering Marvin. Thus, the Jury's verdict is not inconsistent.

Appellant next argues that if the jury instructions on murder and involuntary manslaughter were warranted, then the trial court's instructions were prejudicially erroneous because the jury was not properly instructed on how to determine the existence of the lesser included offenses. Specifically, appellant contends that the court's instructions on the determination of the lesser included offenses constituted an "acquittal first" instruction.

In its instructions to the jury, the court stated:

"BEFORE YOU CAN FIND THE DEFENDANT GUILTY OF AN OFFENSE WHICH PROVIDES ALTERNATIVE METHODS OF COMMITTING THE OFFENSE, YOU MUST BE UNANIMOUS IN YOUR VERDICT AS TO ANY ONE ALTERNATIVE. THE ABILITY TO FIND A LESSER INCLUDED OFFENSE IS NOT DESIGNED TO RELIEVE YOU FROM THE PERFORMANCE OF AN UNPLEASANT DUTY. IT IS INCLUDED TO

PREVENT A FAILURE OF JUSTICE IF THE EVIDENCE FAILS TO PROVE THE ORIGINAL CHARGE BUT DOES JUSTIFY A VERDICT FOR THE LESSER OFFENSE." (Tr. 730.)

The court also stated:

"BEFORE YOU CAN FIND THE DEFENDANT GUILTY OR NOT GUILTY, YOU MUST UNANIMOUSLY AGREE ON YOUR VERDICT." (Jr. 740.)

In *State v. Thomas* (1988), 40 Ohio St. 3d 213, at 219-220, certiorari denied, *Thomas v. Ohio* (1989), 107 L.Ed. 2d 54, 110 S.Ct. 89, the court stated:

"*** We reject the 'acquittal first' instruction *** because such an instruction encroaches on the province of the jury to decide questions of fact and to arrive at a verdict based on all the evidence before it and all the various offenses on which it has been properly instructed.

"The defendant's right to have the jury instructed on a lesser included offense is fundamental to providing defendant with a fair trial. *** The jury is the sole and final arbiter of the facts in a criminal case. Under proper instructions, the jury must be able to consider all the criminal implications that reasonably arise from the proof, and should not 'be encouraged to engage in conjecture for the purpose of offering clemency to the accused.' *** Although the risk of coerced decisions may be present in any jury deliberation, we agree that the 'acquittal first' instruction exacerbates such risk. ***"

The court then went on to hold, at paragraph three of the syllabus:

"A jury must unanimously agree that the defendant is guilty of a particular criminal offense before returning a verdict of guilty on that offense. If a jury is unable to agree unanimously that a defendant is guilty of a particular offense, it may proceed to consider a lesser included offense upon which evidence has been presented. The jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense. ***"

This court finds that, although appellant's trial was held before the decision in *Thomas, supra,* the trial court erred and prejudiced appellant by giving an "acquittal first" instruction. Accordingly, appellant's ninth assignment of error is' sustained in part and is overruled in part.

In his tenth assignment of error, appellant asserts that he was denied the effective assis-

tance of counsel guaranteed by the Sixth and Fourteenth Amendments. Specifically, appellant asserts that his counsel was ineffective because he failed to object to, move to dismiss or seek a narrower time frame for the alleged offense from that provided in the indictment, bill of particulars and discovery procedures; he failed to make numerous objections to improper evidence and argumentative questions by the prosecution; he failed to object to improper closing arguments by the prosecution; he failed to object or move for a mistrial when the decedent's sister had contact with a juror; he elicited prejudicial evidence of prior bad acts of appellant during cross-examination of a prosecution's witness; he elicited testimony regarding conversations between appellant and his common-law wife, but did not call her as a witness; he failed to request a limiting instruction on the prior bad act evidence; he failed to object to inadmissible evidence, specifically the grotesque photos; and he failed to object to evidence of appellant's prior misdemeanor convictions, although he argued against their admissibility.

Appellant has the burden of proving ineffective assistance of counsel. *State v. Smith* (1981), 3 Ohio App. 3d 115. In *State v. Smith* (1985), 17 Ohio St. 3d 98, the court adopted the two-prong analysis espoused in *Strickland v. Washington* (1984), 466 U.S. 668, for determining whether counsel's assistance was so defective as to require reversal of a conviction. See, also, *State v. Brooks* (1986), 25 Ohio St. 3d 144, certiorari denied, *Brooks v. Ohio* (1987), 479 U.S. 1101. In *Strickland,* the court held:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." See, also, *State v. Hester* (1976), 45 Ohio St. 2d 71.

To demonstrate ineffective assistance of counsel, appellant must show that the representation by his counsel fell below an objective standard of reasonableness and, as a result, there is a reasonable probability that, but for such unprofessional errors, the result of the case would have

been different. *State v. Lytle* (1976), 48 Ohio St. 2d 391, vacated in part on other grounds, *Lytle v. Ohio* (1978), 438 U.S. 910. The record in this case demonstrates that the errors of appellant's counsel were so seriously deficient as to satisfy the first prong of the *Strickland* test. At the very beginning of the trial, appellant's counsel, in his opening statement, stated that: "*** during the course of *voir dire* examination everybody must have said, this guy's [appellant) a kook, with all the admissions that he made. ***" (Tr. 12-13.) He also placed appellant at the scene of the crime, albeit in the early morning hours of August 3; said appellant broke the plexiglass on Marvin and Wanda's door; broke the door lock; hit and pushed Marvin; slapped Wanda and maybe even knocked her down. Appellant's counsel also stated that appellant told his common-law wife that the police would probably be arresting him for assault and battery and that, after Wanda and Marvin were found dead, appellant said "*** my God, I must have done it. ***" (Tr. 18.) No argument has been made to show how these statements could possibly have aided appellant's defense, especially in light of the fact that without these statements, and appellant's admissions during his testimony, the only evidence that the prosecution had which tied appellant to the scene of the crime were his fingerprints on the broken door. Consequently, counsel's statements started the jury off on the wrong foot as far as a defense based on reasonable doubt was concerned.

During the course of the trial, appellant's counsel consistently failed to object to testimony concerning evidence of prior bad acts, as well as failed to object to hearsay evidence. In addition, on several occasions throughout the trial, appellant's counsel elicited prior acts testimony through his own questioning of the witnesses. Evidence of other crimes which is permitted to come before the jury due to defense counsel's neglect, ignorance or senseless disregard of the defendant's rights and which bears no reasonable relationship to a legitimate trial strategy has been held sufficient to render the assistance of counsel ineffective. *State v. Martin* (1987), 37 Ohio App. 3d 213.

The second part of the *Strickland* test requires that appellant show that his counsel's deficient performance prejudiced his defense. This requires showing that counsel's errors were so serious as to deprive appellant of a trial whose result is reliable. This court finds that the second part of the *Strickland* test is also satisfied herein. No consistent trial strategy can be gleaned after a thorough reading of the record. Appellant's counsel's actions in failing to object to the inadmissible testimony of other acts by appellant, in failing to object to inadmissible hearsay testimony and in failing to object to the prosecutor's improper cross-examination of appellant's character witnesses, so seriously prejudiced the defense that this court cannot reliably conclude that the jury arrived at a fair result in the trial. Accordingly, appellant's tenth assignment of error is sustained.

Appellant's second and third assignments of error are related and will be considered together. In these assignments of error, appellant asserts that the state failed to produce evidence which was sufficient as a matter of law to sustain his convictions and that the circumstantial evidence was totally inconsistent with appellant's reasonable theory of innocence.

In a criminal case, the standard for review is limited to determining whether there was sufficient evidence to support a finding of guilty. *State v. Stewart* (1964), 176 Ohio St. 156, certiorari denied, *Stewart v. Ohio* (1964), 379 U.S. 947. In *State v. Eley* (1978), 56 Ohio St. 2d 169, the court stated, at 172:

"Furthermore, in considering an assignment of error in a criminal case which attacks the sufficiency of evidence, a certain perspective is required. This court's examination of the record at trial is limited to a determination of whether there was evidence presented, which if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Atkins v. State* (1926), 115 Ohio St. 542, 546; *State v. Sorgee* (1978), 54 Ohio St. 2d 464, 465. Our review is thus confined to a determination of whether there was substantial evidence. ***" The evidence must be construed most strongly in favor of the state in deciding whether, as a matter of law, the judgment of the trier of facts is supported by sufficient evidence. *State v. Thrower* (Nov. 27, 1973), Franklin App. No. 73AP-292, unreported (1973 Opinions 3032).

This court has previously found that much improper evidence was admitted during this trial which prejudiced appellant. Thus, the issue in this case is not whether the verdict was based on sufficient evidence, but that the improper evidence before the jury contributed to their finding appellant guilty beyond a reasonable doubt. Because improper evidence was admitted at trial, it follows that the jury would utilize this evidence in its deliberations and in reaching its verdict. Thus, because the jury's verdict was

based, in part, on evidence which should not have been before it, appellant's second and third assignments of error are overruled. For the foregoing reasons, appellant's first, second, third, fourth, and eighth assignments of error are overruled; appellant's ninth assignment of error is overruled in part and is sustained in part; and appellant's fifth, sixth seventh and tenth assignments of error are sustained. The judgment of the trial court is reversed and this cause is remanded for a new trial.

*Judgment reversed and
cause remanded.*

STRAUSBAUGH and WHITESIDE, J.J., concur.