Appellant-defendant Kea Mathis appeals from her convictions for attempted murder in violation of R.C. 2923.02 and 2903.02, and felonious assault in violation of R.C. 2903.11(A) (2). This Court affirms.
 I.
Mathis and her sister Krisdon lived next door to Christine Cook and Christine's seventeen-year-old son Shawn. Krisdon was dating Shawn and Shawn had given Krisdon a jacket as a present. A dispute arose over the ownership of the jacket in December 1997 and Christine and Shawn went to Mathis' house to retrieve it. Mathis came to the front door carrying a small kitchen knife and soon became involved in a physical confrontation with Christine. During the fight, Mathis stabbed Christine several times with the knife. Mathis also stabbed Shawn when he attempted to intervene.
Mathis was indicted for one count of attempted murder and one count of felonious assault for attacking Christine, and one count of attempted murder and one count of felonious assault for stabbing Shawn. After a jury trial, Mathis was convicted on both counts relating to Christine and for felonious assault in relation to Shawn, but was acquitted of attempted murder in the stabbing of Shawn. Mathis timely appealed.
 II.
Mathis' first assignment of error states:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ALLOWING THE PROSECUTOR, OVER THE OBJECTIONS OF APPELLANT, [TO] QUESTION APPELLANT'S CHARACTER WITNESS ABOUT ALLEGED INCIDENTS THAT HAD NOT BEEN, AND WERE NEVER ADMITTED INTO EVIDENCE.
At trial, Mathis presented evidence pertaining to her good character. This evidence consisted of a neighbor's testimony that Mathis had a good reputation and that the neighbor had a good opinion of Mathis. During cross-examination, the prosecution questioned the neighbor about specific instances of prior conduct by Mathis:
 Q. Well, let me start with this question: Kea doesn't have a temper, never seen her lose her temper, scream and yell at anybody, get violent?
A. I never have witnessed that.
 Q. So, because of that you have an opinion that Kea is a nice kid, hard worker, all of that stuff?
A. That's all I've seen.
 Q. So, if you were told or if you had in your personal knowledge that Kea physically abused, and when I say "abused" I mean punished — whether it's hitting, slapping, punching, whatever — Krisdon, would that change your opinion of Kea?
 [Mathis' counsel]: Objection to that, that hasn't been testified to.
THE COURT: Overruled.
 THE WITNESS: I don't know of any such thing. I couldn't tell you that.
 [The prosecutor]: I'm asking you if I told you that was true, would that change your opinion?
[Mathis' counsel]: Objection.
THE WITNESS: I don't know that it is true.
 THE COURT: The objection is overruled and, ma'am, it's a question that you must answer. If it were true, would that change your opinion? It's a simple question.
THE WITNESS: No.
BY [the prosecutor]:
 Q. And if you knew CSB was called out because of an altercation that took place inside that house because of things that Kea did to both her sister, Krisdon, and to Kirk, would that change your opinion of Kea?
 [Mathis' counsel]: Judge, I have to object. None of this has been established.
THE COURT: Come on up here at side bar.
 (Whereupon, a discussion was had at side bar off the record.)
 THE COURT: Your objections are noted and your exceptions are noted.
BY [the prosecutor]:
 Q. I'll rephrase this question or I'll put it to you again.
 Same question: Assuming that these facts are true, meaning CSB was called out because of a complaint that Kea was mistreating Krisdon and Kirk in that house, would that change your opinion with regard to Kea?
A. No.
Mathis argues that it was improper for the trial court to permit this line of questioning to continue over her objections.
Evid.R. 404 generally governs the admissibility of character evidence:
 (A) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible[.]
(Emphasis added.) In the instant case, the prosecution merely sought to use evidence of bad character to rebut the evidence of good character that had been offered by Mathis. This is clearly authorized by Evid.R. 404(A) (1).
Additionally, Evid.R. 405 describes the methods a party may use to prove character:
 (A) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
(Emphasis added.) In the instant case, the prosecution merely inquired about relevant specific instances of bad conduct by Mathis. Again, this is clearly authorized by Evid.R. 405(A). See, generally, State v. Jackson (1991), 57 Ohio St.3d 29, 39;State v. Sims (1981), 3 Ohio App.3d 321, 323-324.
However, Mathis also argues that the prosecution did not have a good faith basis for the questions that it asked on cross-examination. Mathis correctly notes that when using specific instances of bad conduct to cross-examine a character witness, an attorney must have a good faith factual basis for the prior conduct. State v. Hart (1991), 72 Ohio App.3d 92, 98. In that regard, when Mathis' counsel challenged the basis for the prosecution's questions, the trial court ordered a side bar conference. After the side bar, the prosecution repeated the pending question without any further interruptions from Mathis' counsel. Because the side bar occurred off the record, it is impossible to tell what was said therein. Nevertheless, the clear implication of this chain of events is that the prosecution provided the trial court with a basis for its questions during the side bar conference. Therefore, absent any evidence to the contrary, this Court will presume that the prosecution had a good faith factual basis for the prior conduct that was the subject of cross-examination.
Assignment of error number one is not well taken.
 III.
Mathis' second assignment of error states:
 THE TRIAL COURT ERRED IN SENTENCING APPELLANT FOR BOTH ATTEMPTED MURDER AND FELONIOUS ASSAULT OF THE SAME VICTIM.
In this assignment of error, Mathis claims that felonious assault and attempted murder are allied offenses of similar import. Therefore, argues Mathis, because the felonious assault and attempted murder convictions relating to Christine Cook both arise from the same conduct with the same animus, she could not be sentenced for both crimes under R.C. 2941.25.
In Newark v. Vazirani (1990), 48 Ohio St.3d 81, the Supreme Court of Ohio set forth a two-tiered test for determining whether multiple crimes must be merged under R.C. 2941.25:
 In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
Id. at syllabus.
In State v. Swan (Oct. 9, 1991), Hamilton App. No. C-900655, unreported, the court applied the Vazirani test to the crimes of attempted murder and felonious assault with a deadly weapon in violation of R.C. 2903.11(A) (2), and concluded that they were not allied offenses of similar import.
The offenses of attempted murder as proscribed under R.C. 2903.02 and 2923.02 and felonious assault as proscribed under R.C. 2903.11(A) (2) share only the element of causation. A conviction of attempted murder requires proof that the accused acted purposely and that his conduct, if successful, would have resulted in the death of another, while a conviction of felonious assault may be obtained upon proof that the accused acted knowingly and that he caused or attempted to cause physical harm. Pursuant to R.C.2901.22(E), proof of purpose may suffice to prove knowledge, but proof of knowledge is not sufficient to prove purpose. It is equally clear that physical harm may be presumed from proof of death, but that the obverse does not hold true. Consequently, it cannot be said that an act of felonious assault will result in an act of attempted murder.
We note, on the other hand, that a charge of felonious assault under R.C. 2903.11(A) (2) requires proof that the accused accomplished the proscribed result by means of a deadly weapon or dangerous ordnance, while, on a charge of attempted murder, the proscribed result may be accomplished by any means. Consequently, it cannot be said that an act of attempted murder will perforce result in an act of felonious assault as that offense is defined under R.C. 2903.11(A) (2).
Id. But, see, State v. Williams (1996), 115 Ohio App.3d 24, 36;State v. Gimenez (Sept. 4, 1997), Cuyahoga App. No. 71190, unreported; State v. Puckett (Mar. 27, 1998), Greene App. No. 97 CA 43, unreported.
This Court agrees with the analysis set forth in Swan and concludes that attempted murder and felonious assault with a deadly weapon in violation of R.C. 2903.11(A) (2) are not allied offenses of similar import. As such, Mathis' second assignment of error is not well taken.
 IV.
Mathis' third assignment of error states:
 THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO A TERM OF IMPRISONMENT THAT EXCEEDED THE MINIMUM AUTHORIZED PRISON TIME.
Mathis argues that she should not have been sentenced to more than a minimum prison term because she is a first time offender. Mathis relies on R.C. 2929.14(B), which states:
 [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
In the instant case, the trial court stated the following at Mathis' sentencing hearing:
 Ms. Mathis, I'm at a bit of a loss with you. What you said today is just quite typical of the way that you've acted throughout this entire event.
 You've shown no remorse whatsoever. You today come before me, even after the jury has found you guilty, and said you've done nothing wrong. It shows me that you're not getting the message, not in the least bit.
It will be order in the Court or it will be cleared.
 People come before me and ask for mercy for you. They should know that you had your opportunity for mercy. You had a chance to stand before me and enter a plea of guilty and admit your guilt and apologize to the victim and spare the victims the trial by coming forward and going through the trial, you chose not to do that.
 Even to this day you show no remorse. People come before me and ask if I can make a difference, if what I do today can make a difference in the community.
 And I say to them, yeah, I think what I am going to do should make a difference in the community, perhaps not the way they wished, though. The difference so that people understand that we are not going to tolerate this kind of violence in the community under any circumstances.
 I, for one, am sick and tired of people coming before me and blaming the victims and blaming somebody else for their own problems. They fail to stand up and take responsibility for their own actions and that's just what you've done here today.
 But for the grace of God and the quick work of the staff at Akron City Hospital this would be a murder case and you would be facing life in the penitentiary.
Although the above quoted statement does not explicitly contain the findings required by R.C. 2929.14(B), these statements coupled with the record support a conclusion that the shortest prison term would demean the seriousness of Mathis' conduct and would not adequately protect the public from future crime. Because this Court has previously held that R.C. 2929.14(B) does not require the explicit recitation of any "magic words," State v. Blondheim
(May 27, 1998), Summit
App. No. 18594, unreported,[1] the trial court satisfied R.C.2929.14(B). Mathis' third assignment of error is not well taken.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Summit County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ DONNA J. CARR
SLABY, P.J.
BATCHELDER, J.
CONCUR
[1] Although there has been considerable disagreement among Ohio appellate districts concerning the necessity of explicit findings under R.C. 2929.14(B), see State v. Edmonson (Sept. 25, 1998), Portage App. No. 97-P-0067, unreported, this Court will continue to adhere to its prior holdings on this issue until the Supreme Court of Ohio concludes otherwise. In that regard, it should be noted that this issue has been accepted for review by the Supreme Court of Ohio based on the certification of a conflict in the Edmonson case. See State v. Edmonson (1999), 84 Ohio St.3d 1473.