OPINION
Defendant-appellant, Vent L. Hairston, appeals the February 12, 2001 judgment entry of the Franklin County Court of Common Pleas, convicting him of burglary, receiving stolen property, and forgery. Pursuant to R.C. 2941.25(A), for purposes of sentencing, the trial court merged the burglary and receiving stolen property counts. Appellant was sentenced to a seven year term of imprisonment for the burglary and receiving stolen property counts, and a seven year term of imprisonment for the forgery count, to be served concurrently with the burglary and receiving stolen property counts. For the following reasons, we affirm.
On April 24, 2000, appellant was indicted on one count of burglary, a felony of the second degree in violation of R.C. 2911.12, one count of receiving stolen property, a felony of the fifth degree in violation of R.C. 2913.51, and one count of forgery, a felony of the fifth degree in violation of R.C. 2913.31. A jury trial occurred on December 11, 2000, in which appellant did not testify. The following facts are taken primarily from the testimony of Kathy Walsh, employee of White Castle, Kevin E. Cary, the victim, Alex Belinky, Manager of Luigi's Pawn Shop, Officer John Fantin, Officer Daniel Michael Adair, and statements appellant made to Leslie M. Booker, Columbus Burglary Detective, along with appellant's signed written confession, both of which were admitted at trial.
During the morning hours of December 11, 1999, Mr. Cary testified that his home was burglarized and that his briefcase, electronic organizer, credit cards, wallet, checkbook, checkbook register, pens and pencils, keys, and a prescription medicine bottle were among the items missing. Mr. Cary testified that he telephoned 911 to report the burglary and to file a police report. Officer Adair arrived at the scene of the burglary to take the report.
Officer Adair testified that, when he arrived at Mr. Cary's home, he noticed that the latch to the screened- in porch had been pried loose and that three wooden window frames and the glass panes had been removed from the door. Officer Adair collected a red-handled Swiss army knife and a red money clip that were found next to the door. Officer Adair further testified that the largest blade on the Swiss army knife was open and had scratch marks about a quarter-inch down on both sides of it.
Approximately two hours later, Officers Fantin and Gates were dispatched to the White Castle restaurant located at the corner of High Street and Second Avenue. Ms. Walsh testified that appellant, who was shabbily dressed, was attempting to use credit cards to purchase food. Another employee explained to appellant that the restaurant had stopped accepting credit cards for food purchases a number of years ago. Ms. Walsh further testified that appellant was pestering other customers in the restaurant and tried to get one customer to purchase food for him. When she noticed the customer in line became afraid, Ms. Walsh called the police. Ms. Walsh additionally testified that, when she called the police, she gave a description of appellant to the officers.
When Officers Fantin and Gates arrived at White Castle, they recognized appellant, based on Ms. Walsh's description, and approached him. Officer Fantin testified that, when he approached appellant, he could see credit cards bulging out of his coat pocket. Officer Fantin asked appellant for his name and identification. Officer Fantin then reached into appellant's coat pocket and pulled out one of the credit cards. Officer Fantin testified that the credit card that he retrieved from appellant's pocket belonged to a Kevin Cary and that he recognized that name as the victim of a burglary earlier that morning. Officer Fantin then placed appellant under arrest and conducted a further search of his person. Officer Fantin found, in addition to the credit cards, a necklace, a bracelet, a ring, a sales receipt from Luigi's Pawn Shop, a piece of wood, a bank check made out to Mr. Cary, a pocket organizer, and a set of car and house keys. Officer Fantin contacted Officer Adair to come to White Castle. Officer Adair testified that, when he arrived at White Castle, he inspected the items recovered from appellant by Officer Fantin, and specifically recognized the piece of wood as being part of the window frame missing from Mr. Cary's home.
Officer Fantin testified that after appellant was placed under arrest, he took him to Luigi's Pawn Shop to see if an employee of the pawn shop could identify the jewelry as belonging to the pawn shop, along with identifying appellant as the individual who purchased the items. Upon arrival to the pawn shop, Officer Fantin spoke to the manager, Mr. Belinky. Mr. Belinky testified that he identified the jewelry as belonging to his store, along with appellant as the person who made the purchase.
Shortly thereafter, appellant was taken to the Columbus Police Headquarters where Detective Booker interviewed him. Detective Booker testified that she read appellant his rights and then proceeded to interview him. Detective Booker stated that appellant told her that a "guy named L.A. asked him if he wanted to go hit a lick." (Tr. 279.) Detective Booker asked appellant what he meant by that statement and appellant stated that it meant to steal something to get money for drugs. Appellant told Detective Booker that he and L.A. went to Buttles Avenue. L.A. then snatched open the door, and took a leather bag. Detective Booker testified that appellant told her he took the credit cards out of the bag, walked to Luigi's Pawn Shop and purchased some jewelry, and then went to White Castle to get something to eat. Detective Booker testified that after that conversation, she took the items that were collected from appellant's person and at the crime scene, dumped them on the table, and asked appellant to pick out the items that belonged to him. Appellant picked out the red-handled Swiss army knife and the red money clip.
After appellant identified those two items as belonging to him, Detective Booker requested that he provide her with a written statement. In his statement, appellant wrote that he left the Towne Motel with his friend L.A. and walked up High Street. They wanted to hit a lick so they could get high. Therefore, they went to a building on Buttles where L.A. snatched open a door. Appellant stated that he got some credit cards, walked to Luigi's Pawn Shop, and purchased some jewelry. Appellant further stated he then walked to White Castle where he tried to get something to eat.
On February 12, 2001, the jury found appellant guilty of burglary, receiving stolen property, and forgery. The trial court sentenced appellant to an aggregate term of imprisonment of seven years.
It is from this entry of sentence that appellant appeals, raising the following two assignments of error:
Assignment of Error One
 THE COURT ERRED BY ALLOWING THE ADMISSION OF IRRELEVANT AND PREJUDICIAL MATERIAL REGARDING OTHER ACTS COMMITTED BY THE DEFENDANT, IN VIOLATION OF THE OHIO RULES OF EVIDENCE AND THE DEFENDANT'S SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTION.
Assignment of Error Two
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
In his first assignment of error, appellant challenges the admissibility of the testimony relating to his arrest. First, appellant challenges the introduction of Detective Booker's testimony that appellant appeared unkempt. On appeal, appellant contends that this testimony likely influenced the jury and the evidence was not relevant under Evid.R. 401 and should have been excluded under Evid.R. 403. As pointed out by the state, however, defense counsel failed to object to this evidence at trial and, as such, waived any error on these grounds absent plain error. See State v. Slagle (1992), 65 Ohio St.3d 597, 604. The failure to object to evidence at trial constitutes a waiver of any challenge on that evidence on appeal, except for plain error. State v. Robertson (1993), 90 Ohio App.3d 715, 728. To constitute plain error, "'[t]he error must be obvious on the records, palpable, and fundamental'" such that it should have been apparent to the trial court without objection. State v. Tichon (1995), 102 Ohio App.3d 758, 767. Under a plain error analysis, the reviewing court examines whether substantial rights of the accused were so adversely affected as to undermine the fairness of the guilt determining process. State v. Lewis (July 21, 1998), Franklin App. No. 97APA09-1263, unreported, citing State v. Swanson (1984), 16 Ohio App.3d 375. To prevail, appellant must establish that the outcome of his trial clearly would have been different, but for the alleged error. State v. Waddell (1996), 75 Ohio St.3d 163; State v. Long (1978), 53 Ohio St.2d 91, 97 (plain error is one in which but for the error, the outcome would have been different).
In this case, Detective Booker testified that appellant, at the time of his arrest, looked thin, tired, raggedy, like he had not taken a bath in a couple of days, looked unkempt and his clothing was dirty. Detective Booker's testimony was consistent with the earlier testimony from Ms. Walsh who stated that appellant was shabbily dressed and did not look like the type of person that would be in possession of a stack of credit cards, and testimony from Officer Fantin who stated that appellant was dressed as though he lived on the streets. Officer Fantin testified that appellant "had on more of a worn-type clothing, several layers of clothing, obviously to keep warm, probably to have a place to stay warm." (Tr. 217.) Defendant's face and body are considered physical evidence. State v. Brown (1988), 38 Ohio St.3d 305, 317. Defense counsel did not object to either of these earlier testimonies. Defense counsel's failure to object at trial waived the claim of relevancy under Evid.R. 401, and the claim of prejudicial material under Evid.R. 403. Appellant has failed to demonstrate that the outcome of his trial would have been different, absent the testimony of Detective Booker. Based on the testimony, we cannot find that, but for the admission of the evidence, the outcome of appellant's trial would have been different. As a result, we are unable to find that the admission of the contested evidence constitutes plain error.
Appellant also challenges Detective Booker's testimony, over defense counsel's objection, that appellant stated he was tired of going to jail. On direct examination, the prosecution examined Detective Booker regarding a conversation the detective had with appellant on the day he was arrested. The prosecution asked Detective Booker to detail what appellant told her. Detective Booker stated that appellant advised her that he was tired of going to jail. Defense counsel objected. The trial court sustained defense counsel's objection and told the jury to disregard the detective's testimony of appellant telling her that he was tired of going to jail. Because the trial court sustained defense counsel's objection, we cannot find reversible error. See State v. Jones (2001), 91 Ohio St.3d 335, 344 (objection sustained and corrective instruction given). The jury is presumed to have followed the court's instructions. State v. Raglin (1998), 83 Ohio St.3d 253, 264. Therefore, appellant's contention that this testimony was unduly prejudicial and should have been excluded is without merit.
Appellant next challenges, in his first assignment of error, Detective Booker's testimony, over defense counsel's objection, that appellant stated he needed help for his drug problem. On appeal, appellant argues that the testimony was improper and likely influenced the jury to decide the case on an improper basis and should have been excluded. The state contends that this statement was an oral confession and admissible under Evid.R. 801(D), as admissions of a party opponent, and regardless of its prejudicial effect, was relevant. We agree. Statements made by appellant to Detective Booker during the interrogation are admissible as nonhearsay admission by party opponent under Evid.R. 801(D)(2)(a). The trial court properly admitted into evidence, as an admission, what appellant told Detective Booker.
We have examined the remarks about which appellant complains of and we agree that this evidence of appellant stating that he needed help is relevant to the issue of his motive. We are not convinced that the probative value of such evidence was substantially outweighed by the unfair prejudice to appellant to require its exclusion under Evid.R. 403(A). Moreover, even if appellant's own statement made to Detective Booker were improperly admitted, such admission is harmless beyond a reasonable doubt. See State v. Lyles (1989), 42 Ohio St.3d 98, 100. Failure to exclude irrelevant evidence is harmless when the remaining evidence, standing alone, comprises overwhelming proof of appellant's guilt. See Lyles, supra; State v. Hart (1991), 72 Ohio App.3d 92, 99.
Here, there was overwhelming evidence of appellant's guilt of burglary, receiving stolen property, and forgery. The most overwhelming evidence is appellant's signed confession. Appellant indicated that he wanted to get high, so he got some credit cards from a building on Buttles, proceeded to the pawn shop where he asked for and purchased some jewelry, and then proceeded to White Castle to get something to eat. Furthermore, a search of appellant, incident to his arrest, found credit cards in Mr. Cary's name, a pocket organizer, a piece of wood from the window frame of the crime scene, a bank check in Mr. Cary's name, and a set of keys, all of which Mr. Cary later identified as belonging to him. Additionally, during his interview with Detective Booker, appellant identified a red money clip and a red Swiss army knife as belonging to him. Those two items, as testified by Officer Adair, were recovered at the scene of the crime. Given the undisputed nature of the testimony and evidence, we find that, if there was any error in admitting evidence concerning appellant's statements, that error was harmless in this case. Cf. State v. Allen (1985), 21 Ohio App.3d 199, 201 (improperly admitted evidence regarding handgun found on codefendant was harmless error given the overwhelming evidence of appellant's guilt).
Finally, in his first assignment of error, appellant also challenges Officer Fantin's testimony, over defense counsel's objection, that appellant had an outstanding warrant for his arrest. Defense counsel based his objection on the implication that such testimony would leave the jury with some specific prior crime, wrong or act committed by appellant. On appeal, appellant contends that such testimony was unduly prejudicial and should have been excluded under Evid.R. 401 and 403.
Evid.R. 402 provides that all relevant evidence is generally admissible and that all irrelevant evidence is inadmissible. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Although relevant, evidence should be excluded "if its probative value is substantially outweighed by danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). In general, where error in the admission of relevant evidence is alleged under Evid.R. 403, the decision of the trial court will not be reversed unless the trial court clearly abused its discretion and the defendant has been materially prejudiced as a result. State v. Maurer (1984),15 Ohio St.3d 239. Moreover, a trial court's improper evidentiary ruling, over an objection, cannot be the basis for reversal of the judgment when the alleged error was harmless. See Lyles, at 100; Hart, at 99; Evid.R. 103(A); Crim.R. 52(A).
Here, the state contends that appellant failed to timely object to Officer Fantin's testimony and, as such, he waived any error on these grounds absent plain error. "Ordinarily the failure to lodge a timely objection to the admission of testimony results in the forfeiture of any claimed error." State v. McKee (2001), 91 Ohio St.3d 292, 298 (Cook, J., dissenting), citing State v. Allen (1995), 73 Ohio St.3d 626, 633. Although defense counsel did not immediately make the objection at the time Officer Fantin mentioned the arrest warrant, he did make an objection. The prosecution questioned Officer Fantin as follows:
 Q. NOW, DID YOU PLACE HIM UNDER ARREST AT THAT POINT IN TIME?
A. AS FAR WITH AN OUTSTANDING WARRANT ON HIM?
Q. DID YOU NO, NO.
A. I'M SORRY.
Q. WAS HE PLACED UNDER ARREST, YES OR NO?
A. YES.
Q. OKAY. DID YOU SEARCH HIM?
A. YES.
 Q. FURTHER THAN JUST REACHING IN THE POCKET WITH THE CREDIT CARDS?
A. YEAH.
 Q. WHAT ELSE DID YOU FIND ON HIS PERSON AT THAT POINT IN TIME?
 [DEFENSE COUNSEL:] YOUR HONOR, I AM GOING TO OBJECT AT THIS POINT. CAN WE APPROACH? [Tr. 201-202.]
Although defense counsel did not make an immediate objection when Officer Fantin mentioned the outstanding warrant, his objection was still timely, therefore preserving the issue as grounds for appeal. Although timely, appellant has, however, failed to demonstrate any possibility of prejudice resulting from Officer Fantin's testimony. Careful review of the record indicates that Officer Fantin did not testify in the affirmative that appellant did have an outstanding warrant for his arrest. The insertion of Officer Fantin's testimony regarding the outstanding warrant had no probative value and the capacity to cause unfair prejudice under Evid.R. 403(A). Moreover, the prosecution in closing arguments did not highlight Officer Fantin's testimony. As such, we find that the trial court did not abuse its discretion under Evid.R. 403(A) in allowing Officer Fantin's statement. As such, appellant's first assignment of error is not well-taken and is overruled.
In his second assignment of error, appellant generally challenges the sufficiency and weight of the evidence to support his convictions of burglary, receiving stolen property and forgery. Our review of the record reveals, however, that appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.
Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, at 387.
Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. Thompkins, at 387. In so doing, the court of appeals, sits as a "`thirteenth juror'" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin [1983], 20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387.
Here, appellant admitted that he was guilty of forgery and receiving stolen property. However, appellant contends that the evidence was insufficient as to the burglary conviction and that this conviction was against the manifest weight of the evidence because there was a lack of evidence placing appellant at the scene of the burglary, or any evidence connecting him to the burglary. We find neither contention persuasive.
Our independent review of the record establishes that the state produced sufficient evidence of appellant's guilt of burglary beyond a reasonable doubt. Appellant contends that the state failed to present any evidence linking appellant to the burglary or placing him at the scene of the crime. We disagree. First and foremost, appellant confessed to the crimes. In addition to appellant's written confession, personal items belonging to appellant were found in Mr. Cary's home, where appellant admitted to being. At the time of appellant's arrest, the personal effects of Mr. Cary were recovered and later identified as belonging to Mr. Cary. In addition to these personal items, a piece of wood from Mr. Cary's window pane was also recovered from appellant and later identified as belonging to the scene of the crime. Although no fingerprints were taken to scientifically identify and link appellant to the crime, there was sufficient probative evidence from which reasonable minds could conclude that appellant committed the crimes alleged. Having found the evidence of appellant's guilt sufficient to support the convictions, appellant's second assignment of error is without merit and is overruled.
For the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
TYACK and KENNEDY, JJ., concur.