OPINION
{¶ 1} Appellant, Stephen Christopher Jones, was convicted of felonious assault with a firearm specification, assault, and resisting arrest. Jones was sentenced to a term of three years for the felonious assault conviction, one year for the resisting arrest conviction, and one year for the assault conviction. These terms are concurrent to each other and consecutive to a three-year term for the firearm specification.
 {¶ 2} Jones was a Cleveland Police Officer. In August of 2000, Jones was staying with relatives at their cabin at the Holiday Camplands ("Camplands") in Andover, Ohio. Mr. Keith, the owner of the cabin, became involved in a heated argument with his son, Andre. While patrolling, Camplands Security Officer Mike Offensend noticed the argument.
 {¶ 3} Officer Offensend called another officer working dispatch, and that officer contacted the Ashtabula County Sheriff's Department. Mr. Gentry, the head of Camplands security was called at his home. Mr. Gentry responded to the call with James Taylor, who was visiting Gentry and used to work as a Camplands security officer.
 {¶ 4} Jones and Mr. Keith went for a walk as the security officers questioned Andre. When they returned from their walk, the security officers were still talking to Andre. Jones pulled Andre into the cabin. Jones then argued with Gentry. Soon after, Deputy Niemi of the Ashtabula County Sheriff's Department arrived on the scene.
 {¶ 5} Jones proceeded to argue with Deputy Niemi. Deputy Niemi testified that Jones came down from the porch of the cabin to confront him. He then testified that Jones pushed him. In response to the push, Deputy Niemi maced Jones. Immediately after being maced, Jones grabbed his gun, and yelled, "you mother fucker." Deputy Niemi testified that Jones stuck the gun in his face. Jones claims he merely secured his weapon after being maced, as he was trained to do.
 {¶ 6} All of the witnesses testified that within a matter of seconds of drawing his weapon, Jones retreated into the cabin. Jones then discarded his gun on the couch inside the cabin. Deputy Niemi followed Jones into the cabin. Deputy Niemi attempted to place Jones under arrest, but Jones resisted. Jones claims he believed that Deputy Niemi was a security officer, not a deputy sheriff. During the struggle, Officer Ginn of the Andover Police Department arrived, announced that he was a police officer, and arrested Jones without incident.
 {¶ 7} Jones raises the following assignments of error on appeal. These assignments of error will be addressed out of order.
 {¶ 8} "[1.] The evidence presented at trial was insufficient to sustain appellant's conviction for felonious assault.
 {¶ 9} "[2.] The trial court erred in admitting testimony about appellant's prior acts over defense counsel's objections, and erred again in denying appellant's written motion for a new trial.
 {¶ 10} "[3.] Appellant was denied his right to due process of law and a fundamentally fair trial as guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 5, 10 and 16 of the Ohio Constitution when the trial court denied appellant's motion for a new trial following the outrageous conduct of Deputy Niemi during trial.
 {¶ 11} "[4.] The trial court erred when it entered separate convictions and imposed separate sentences for both felonious assault and assault, in violation of R.C. 2941.25 and appellant's state and federal constitutional rights to due process and to protection against double jeopardy."
 {¶ 12} In his second assignment of error, Jones asserts that the trial court erred when it allowed the state to introduce evidence of a prior arrest.
 {¶ 13} The defense put numerous character witnesses on the stand to testify to Jones' good character. These witnesses generally testified that Jones has a good reputation. Specifically, Officer John Kincaid testified that Jones is held in high esteem in the police department. On cross-examination, the state questioned Kincaid about a prior instance involving Jones in 1998. Officer Kincaid then testified that Jones was arrested for a domestic violence incident involving his wife in 1998, but that Jones was not convicted as a result of the incident.
 {¶ 14} After the defense rested, the state called Officer Adrian Candelaria as a rebuttal witness. Through direct examination, the state questioned Officer Candelaria about the 1998 incident. Defense counsel repeatedly objected to the line of questioning, but the trial court allowed it to continue. Candelaria then testified that he arrested Jones for domestic violence in 1998. He also testified that Jones was intoxicated when he was arrested and that a police-issued firearm was involved in the incident.
 {¶ 15} Jones asserts that the evidence of the 1998 incident was not admissible under Evid.R. 404(B). Evid.R. 404(B) states:
 {¶ 16} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."
 {¶ 17} None of the exceptions apply to the other acts evidence offered in this case. There was no evidence presented Jones had planned to commit the offenses at Camplands. Jones' defense to drawing his weapon was not mistake or accident, but that it was what he was trained to do. The only purpose of this evidence was to show that he acted in conformity with the 1998 incident; i.e., he got drunk and inappropriately used his work-issued firearm.
 {¶ 18} Evidence of other acts under R.C. 2945.59 and Evid.R. 404(B) is to be construed against admissibility.[1] This is because "[t]he average individual is prone to much more readily believe that a person is guilty of the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime."[2]
 {¶ 19} Even though the evidence of the 1998 incident was inadmissible under Evid.R. 404(B), certain portions of it were properly admissible under Evid.R. 404(A)(1). Evid.R. 401(A)(1) states: "Characterof accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable." Since the defense offered favorable character evidence of Jones, the state was permitted to offer rebuttal testimony attacking the character of Jones.[3]
 {¶ 20} One of the ways for the state to rebut the testimony of character witnesses was set forth by the Supreme Court of Ohio inState v. Elliot:
 {¶ 21} "A character witness may be cross-examined as to the existence of reports of particular acts, vices, or associations of the person concerning whom he has testified which are inconsistent with the reputation attributed him by the witness — not to establish the truth of the facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given to his testimony. Such inconsistent testimony tends to show either that the witness is unfamiliar with the reputation concerning which he has testified, or that his standards of what constitutes good repute are unsound."[4]
 {¶ 22} The fact that Jones was not convicted as a result of the 1998 arrest, did not prohibit the state from cross-examining Officer Kincaid about the arrest.[5]
 {¶ 23} Evid.R. 405 provides for appropriate methods for proving character, and states:
 {¶ 24} "(A) Reputation or opinion. In all cases in which evidence of character of a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 {¶ 25} "(B) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."
 {¶ 26} The state was permitted to cross-examine Officer Kincaid about the 1998 incident, because it was a relevant specific instance of conduct under Evid.R. 405(A). However, the state was not permitted to question Officer Candelaria about the incident through direct
examination. This is because the situation was now in the scope of Evid.R. 405(B), where character may only be proved by specific instances of conduct when it is an essential element of the charge, claim or defense. Character was not an essential element of any of the crimes Jones was charged with.
 {¶ 27} The trial court should have sustained defense counsel's objections to Officer Candelaria's testimony regarding the 1998 incident.
 {¶ 28} Moreover, we cannot say that the trial court's error was harmless beyond a reasonable doubt. Even though some evidence of the 1998 incident was properly in front of the jury by means of testimony from Officer Kincaid on cross-examination, certain details were not revealed. Officer Candelaria testified that Jones was intoxicated during the 1998 incident. He also testified that a work-issued firearm was involved in the 1998 incident. Neither of these details would have been before the jury had the trial court excluded this testimony. This improperly admitted evidence was highly prejudicial to Jones. In the case he was actually being tried for, the state presented evidence that he was intoxicated and pointed a work-issued firearm at Deputy Niemi.
 {¶ 29} Jones' second assignment of error has merit.
 {¶ 30} In his third assignment of error, Jones claims he was denied a fair trial because of the inappropriate actions of Deputy Niemi during trial.
 {¶ 31} Deputy Niemi was seated at the prosecution table during the trial. While Jones was testifying, Deputy Niemi was making faces and snickering. Defense counsel heard Deputy Niemi utter "bullshit" in response to part of Jones' testimony. In response to Deputy Niemi's actions, the trial court removed Deputy Niemi from the courtroom. The trial court then individually questioned the members of the jury to determine if they heard any remarks from Deputy Niemi and, if they did, whether they could proceed with the trial in an unbiased manner.
 {¶ 32} The Supreme Court of Ohio has set forth the following standard to be used when reviewing the way a trial court handled an outburst during trial: "the trial court determines, as a question of fact, whether the demonstration deprived the defendant of a fair trial by improperly influencing the jury. In the absence of clear, affirmative evidence to the contrary, the trial court's determination will not be disturbed."[6]
 {¶ 33} While we are extremely troubled with the entirely inappropriate conduct of Deputy Niemi, we cannot say that the trial court abused its discretion in the way it handled the situation. The trial court promptly removed Deputy Niemi from the courtroom to prevent any further disturbance. The jury members were then individually questioned to determine how much they were affected by Niemi's actions. The trial court then determined that the trial could proceed in an unbiased fashion.
 {¶ 34} Jones third assignment of error is without merit.
 {¶ 35} Having found merit in Jones' second assignment of error, Jones' first and fourth assignments of error are moot.
 {¶ 36} The judgment of the trial court is reversed. The cause is remanded for a new trial.
ROBERT A. NADER, J., DIANE V. GRENDELL, J., concur.
[1] State v. Lowe (1994), 69 Ohio St.3d 527, 530.
[2] State v. Hector (1969), 19 Ohio St.2d 167, 174-175.
[3] State v. Smith (1992), 84 Ohio App.3d 647, 662.
[4] State v. Elliott (1971), 25 Ohio St.2d 249, paragraph two of the syllabus. (vacated on other grounds (1971), 408 U.S. 939.)
[5] State v. Hart, (1991), 72 Ohio App.3d 92, 98, citing Michelson v.United States (1948), 335 U.S. 469, 482.
[6] State v. Benge (1996), 75 Ohio St.3d 136, 144, quoting State v.Morales (1987), 32 Ohio St.3d 252, 255.