The State of Ohio, Appellee, *v.* Elliott, Appellant.

(No. 69-845—Decided March 17, 1971.)

*Mr. David D. Dowd, Jr.*, prosecuting attorney, and *Mr. Clay E. Hunter*, for appellee.

*Mr. David L. Kessler* and *Miss Violet J. Tarcai*, for appellant.

O'NEILL, C. J. In this case, Miss Violet J. Tarcai represented the appellant in the trial court and in the Court of Appeals and filed the brief in this cause in this court.

David L. Kessler appeared for the appellant in oral argument before this court.

This accounts for the fact that some of the contentions raised in oral argument before this court differed from some of the arguments made in the brief. However, the court is of the opinion that the errors alleged in the brief were broad enough and general enough to encompass and permit the oral arguments which were made to the court in support of the errors alleged in the brief.

Appellant contends that he was denied a trial by a fair and impartial jury because two prospective jurors were challenged for cause and excused in violation of the rule, enunciated in *Witherspoon* v. *Illinois* (1965), 391 U. S. 510, regarding challenge for cause of jurors who hold convictions against capital punishment. However, an examination of the record of the *voir dire* examination of those two jurors discloses that their dismissal from the panel did not violate the *Witherspoon* rule.

The prospective jurors, whose dismissals are challenged by appellant, were Marjorie Foster and Virginia Scipione. They were excused as a result of their answers to the following questions. Prospective juror Foster was asked: "I will ask you whether or not there is any case where you could join in a verdict, join with 11 other jurors in a verdict which would lead to the death of the defendant?" To this she replied: "I don't *think* so." (Em-

phasis supplied.) Prospective juror Scipione was asked: "[I]f you were selected as a juror in a first degree murder case, regardless of what the evidence showed, regardless of how bad the conduct of the defendant might be, because of your beliefs, you'd be unable to join in a verdict that would require capital punishment?" She replied: "I *think* so." (Emphasis supplied.) Both, therefore, testified that they did not *think* they could join in a verdict imposing the death sentence.

Although the use of the word "think" might be said to imply some equivocation, and although voice inflection might be said to be the clue to the precise meaning of these prospective jurors' statements, we are not compelled to delve into those questions because the United States Supreme Court has held that such testimony as that given by Marjorie Foster and Virginia Scipione is a sufficient basis upon which to excuse a prospective juror for cause without violating *Witherspoon. Boulden* v. *Holman* (1969), 394 U. S. 478. In *Boulden,* a venireman was asked: "You *think* you would never be willing to inflict the death penalty in any type case?" (Emphasis supplied.) He replied: "Yes, sir." As was the case with the statements of the two jurors in the present case, the effect of the affirmative reply of the juror in *Boulden* was that he did not *think* he could ever invoke the death penalty. The court, without elaboration, strongly suggested this to be a sufficiently definite statement that the juror would never invoke the death penalty. It follows that, in the instant case, the statements of prospective jurors Foster and Scipione constituted cause for dismissal in compliance with the *Witherspoon* rule.

Appellant's second contention is that a number of veniremen, whose answers on *voir dire* allegedly did not bring them within the language of R. C. 2945.25(C), were challenged for cause and excused on the basis of that provision. However, appellant's contention is founded upon a misinterpretation of R. C. 2945.25(C), which provides, *inter alia,* that a juror may be challenged for the follow-

ing cause: "In the trial of a capital offense, that his opinions preclude him from finding the accused guilty of an offense punishable with death." Appellant would construe that language to mean that a prospective juror may be excused for cause *only* when his opinions regarding capital punishment would prevent him from joining in a verdict of guilty of an offense for which the death penalty is one of the alternative forms of punishment available. Therefore, appellant argues that where a venireman testifies only that his convictions against capital punishment would preclude him from joining in the imposition of the death penalty, as in this case, he may not be excused on the authority of R. C. 2945.25(C).

While the language of R. C. 2945.25(C) may not be perfectly clear, the intent of the General Asesmbly in enacting that provision may be determined by examining it in the light of the other provisions in R. C. 2945.25.

A reading of the entire section discloses that the General Assembly intended that a challenge for cause be permitted where a prospective juror's knowledge or opinions would preclude him from giving fair consideration to all the evidence in his determination of the facts or applying the pertinent law to the facts so determined.

With that legislative purpose in mind, it is clear that R. C. 2945.25(C) is intended to authorize the challenge of veniremen for cause where their opinions against capital punishment would preclude them from either finding the accused guilty of a crime for which the death penalty could be invoked or from ever joining in the imposition of the death penalty. In both instances the prospective juror would be excused because of his refusal to give credence to the applicable law.

Appellant's third contention is that, although he placed his character in issue by calling witnesses to testify to his good character, the trial court erroneously permitted the state to cross-examine his character witnesses about a felonious assault committed by him on a ten-year-old girl. The law regarding the scope of cross-examination of char-

acter witnesses is that "* * * a character witness may be cross-examined as to the existence of reports of particular acts, vices, or associations of the person concerning whom he has testified which are inconsistent with the reputation attributed to him by the witness—not to establish the truth of the facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given his testimony. Such testimony tends to show either that the witness is unfamiliar with the reputation concerning which he has testified, or that his standards of what constitutes good repute are unsound." 47 A. L. R. 2d 1262. See *Michelson* v. *United States* (1948), 335 U. S. 469, 93 L. Ed. 168.

If the defendant had never been convicted of a felonious assault, such question by the prosecutor, being made in bad faith, would be the predicate for error, but no such claim is made herein. Appellant's argument is not that the question was asked in bad faith, with no evidence to back it up, but that the mere asking created prejudice.

The rule is that where a defendant places his good character in issue by introducing evidence to sustain the same, evidence on behalf of the state attacking the character of the accused for the purpose of impugning him as a defendant, must be confined to his general reputation for the particular character traits involved in the offense charged, and evidence of specific acts of conduct of the accused upon particular occasions, bearing upon his character, is inadmissible. *State* v. *Cochrane* (1949), 151 Ohio St. 128, 84 N. E. 2d 742.

The admission of such evidence would raise collateral issues and divert the minds of the jurors from the matter at hand. It is manifestly unfair to compel a party to defend specific acts alleged as proof of bad reputation or character, although he must be prepared to defend his general reputation. This rule is applicable to evidence in rebuttal as well as to original testimony.

However, the testimony offered by the state, with which the court is concerned in the instant cause, is neither original testimony nor evidence offered in rebuttal. Cross-

examination of the defendant is not involved in the question the court is here deciding. Here, the court is concerned with cross-examination of a character witness called by the defendant. As is said in 47 A. L. R. 2d 1262:

"Cross-examination, however, is not necessarily for the purpose of, and is not in the nature of, rebuttal; and hence the rule forbidding the introduction of evidence of specific acts in rebuttal does not necessarily prevent cross-examination of the defendant's character witnesses as to particular acts."

In *Michelson* v. *United States, supra* (335 U. S. 469), Justice Jackson discusses the law in detail and the reason for the rule of law which accords a broad scope to cross-examination of a character witness. He states that the introduction by a defendant of a character witness' testimony "opens a veritable Pandora's box."

Appellant has claimed a number of other errors. However, a careful examination of the record reveals them to be without merit.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

SCHNEIDER, HERBERT, DUNCAN, CORRIGAN, STERN and LEACH, JJ., concur.