The STATE of Ohio, Appellee,

v.

HART, Appellant.

[Cite as *State v. Hart* (1991), 72 Ohio App.3d 92.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–595.

Decided Jan. 8, 1991.

*Michael Miller*, Prosecuting Attorney, *Joyce Anderson* and *Katherine J. Press*, for appellee.

*James Kura*, County Public Defender, and *John W. Keeling*, for appellant.

STRAUSBAUGH, Judge.

On October 25, 1988, defendant, Henry Hart, was indicted on single counts of aggravated burglary, attempted rape, kidnapping, gross sexual imposition, and robbery. All of the counts included the specification that defendant had been previously convicted of rape in 1975. Defendant was convicted on all counts by the jury and of the specification by the court.

Since all of the counts were based upon a single incident, the state elected to have defendant sentenced on aggravated burglary, robbery, and attempted rape. Defendant was sentenced to fifteen to twenty-five years for aggravated burglary, twelve to fifteen years for robbery, and twelve to fifteen years for attempted rape, with all sentences to be served consecutively.

During the state's presentation of evidence, Leann Moshier, a twenty-three-year-old college student, testified that on October 16, 1988 she was in the bedroom of her residence working on a term paper when she was confronted by a tall, thin black man. Upon seeing the man, Moshier started calling for

two of her roommates, Lisa Erwin and Monica Groves, who were upstairs at the time. The man then started to hit Moshier on the face and she backed up to her bed and fell on the bed, trying to protect herself from the assailant's continual blows to her head. Moshier was then thrown to the floor, and the man wrapped a blanket around her head. The suspect then asked Moshier if she had any money. Moshier indicated that she did not have any money. The man saw Moshier's purse nearby and Moshier heard him going through the purse. Moshier testified that she had $8 in the purse. The man asked Moshier if she had any more money, and when she replied that she did not, the suspect hit her again. The man then lifted Moshier's dress and ripped her underpants off and placed his fingers in her vagina.

During this period of time, Moshier's two roommates had fled the apartment and sought help from neighbors. The police were called from a neighbor's apartment. Two of the neighbors entered Moshier's apartment and a scuffle ensued with the assailant. A third neighbor arrived, and the suspect was eventually subdued just outside the apartment.

A Columbus police officer, Jonathan Little, arrived at the scene and handcuffed defendant. Officer Little testified that he recognized defendant as an employee of a local Burger King restaurant at which the officer occasionally ate while on duty. Moshier and the neighbors all identified defendant as the assailant. Following the altercation, defendant had asked for his glasses. Two police officers testified that they saw a pair of glasses on the floor in Moshier's apartment. The glasses were recovered and handed to an officer in the cruiser where defendant was.

Moshier testified that $8 had been taken from her purse. Defendant was subsequently searched at police headquarters and $8.41 was removed from his clothing.

Defendant's parole officer, Carol Lippert, conducted an investigation during which she interviewed Moshier and the three neighbors who had subdued the suspect. Lippert obtained from them a description of Moshier's assailant. The witnesses were shown a photo array of five individuals, and each witness chose defendant's photograph.

Defendant testified on his own behalf, stating that he was walking home that evening when two black men ran towards him. Defendant testified that one of the men collided with him, knocking defendant to the ground. Defendant stated that he got up and proceeded in the direction that the men had run from out of curiosity. Defendant testified that he approached an open door to an apartment and was jumped and subdued by two white men and held until police arrived.

Harold Grant, a bartender at a lounge near where defendant worked, testified on defendant's behalf. Grant testified that he had known defendant for approximately one year. Grant stated that he believed defendant to be a truthful man, and that he was not a troublemaker. Grant further stated that he did not believe that defendant was capable of committing the crimes he was charged with.

Defendant now appeals from the final judgment and sentence entered by the trial court, setting forth the following two assignments of error for review:

"1. The trial court erred when it allowed the alleged victim of an attempted rape to testify, over objection, with respect to her personal belief that the defendant was going to rape her.

"2. The state was improperly allowed to cross-examine the defendant's character witness with respect of an alleged 1969 arrest of the defendant for breaking and entering and two other misdemeanor arrests in 1972 and 1973 when the character witness had already testified that he had only known the defendant for the past year."

Under his first assignment of error, defendant asserts that the trial court committed prejudicial error in allowing the victim, Moshier, to testify as to her belief that defendant was going to rape her. Defendant's assigned error is predicated upon the following exchange between the prosecutor and Moshier on redirect examination:

"Q. Now, when the defendant was touching you with his fingers, what was he saying to you?

"A. Shut up and hold still.

"Q. Did he tell you what he wanted to do?

"A. No.

"Q. Did he tell you to do anything?

"A. Just hold still.

"Q. Where exactly was he touching you?

"A. Between my legs.

"Q. What was going through your mind at that point in time?

"Mr. Larson: Object.

"The Court: Overruled. I will allow it.

"The Witness: I thought he was going to rape me."

Defendant contends that the statement of the witness indicating that she thought her assailant was going to rape her was inadmissible under Evid.R.

701 as an improper opinion and as an expression of belief of the defendant's guilt. Defendant further argues that the victim's testimony was inadmissible under Evid.R. 402 as not relevant. Defendant maintains that the relevant issue in this case was the defendant's state of mind, not the victim's.

■ " * * * [O]pinion testimony is not rendered inadmissible *per se* because it pertains to an ultimate issue. * * * " *State v. Berry* (June 23, 1988), Franklin App. No. 87AP–924, unreported, 1988 WL 66753. See Evid.R. 704. Evid.R. 701 provides that the testimony of a lay witness, in the form of opinions, must be " * * * (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

■ We agree with defendant's contention that the question posed by the prosecutor to the victim concerning what was going through her mind at the time of the incident was not relevant. However, defendant was not prejudiced as a result thereof.

R.C. 2907.02(A)(2), rape, provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." An attempt to commit rape is "conduct which, if successful, would constitute or result in the offense." R.C. 2923.02. See, also, *State v. Woods* (1976), 48 Ohio St.2d 127, 132, 2 O.O.3d 289, 292, 357 N.E.2d 1059, 1063 ("A 'criminal attempt' is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. * * * ").

The victim testified that defendant repeatedly hit her, wrapped a blanket over her head, pulled her dress up, ripped her underpants off, and inserted his fingers in her vagina. The victim's ripped underwear was collected as evidence. The evidence also included photographs of the victim taken shortly after the incident showing her face severely swollen.

Reviewing the record as a whole, and setting aside the objectionable testimony, we find that there is substantial evidence by which a jury could reasonably conclude that defendant had engaged in conduct which, if successful, would have resulted in, or constituted, rape. See, *e.g., State v. Burton* (Feb. 14, 1980), Franklin App. No. 79AP–248 (testimony of victim that she was forced to disrobe, fondled by assailant, and ordered to get in back seat of car with assailant, along with other evidence, was sufficient for jury to conclude that defendant was guilty of attempted rape).

Accordingly, defendant's first assignment of error is overruled.

Under his second assignment of error, defendant asserts that the state was improperly allowed, over objection, to cross-examine defendant's character witness with respect to alleged arrests of defendant for breaking and entering in 1969 and for indecent exposure in 1972 and 1973. Defendant's second assignment of error concerns the testimony of Harold Grant, called by defendant to testify as a character witness.

During direct examination, Grant testified that he had known defendant for approximately one year as a patron of the bar where Grant was employed as a bartender. Grant further testified during direct examination that he believed that defendant was a truthful man, that he was not a troublemaker, and that he did not believe that defendant was capable of committing any of the crimes he was charged with.

During cross-examination, the state asked Grant whether he was aware that defendant had been previously arrested for assault to rape, indecent exposure, and breaking and entering. Defendant's counsel objected on the basis that the questions pertained to arrests rather than being limited solely to prior convictions. The trial court overruled counsel's objection. The witness denied knowing of defendant's prior arrest record and stated that his opinion of defendant would not change even if it were true.

The state contends that questions concerning defendant's prior arrests were offered to impeach the character witness's testimony and that under Evid.R. 405(A), such an inquiry is permissible. Evid.R. 405(A) states:

" * * * In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. *On cross-examination, inquiry is allowable into relevant specific instances of conduct.*" (Emphasis added.)

In *State v. Sims* (1981), 3 Ohio App.3d 321, 3 OBR 375, 445 N.E.2d 235, the defendant was convicted of aggravated robbery and attempted murder. The defense called a character witness, Michael King, who testified that the defendant had a reputation for truthfulness and nonviolence. *Id.* at 323, 3 OBR at 376–378, 445 N.E.2d at 238. During cross-examination of King, the trial court permitted the prosecutor to ask the character witness if he had heard that the defendant had been arrested for aggravated robbery and felonious assault. *Id.* On appeal, the defendant asserted that such questioning was improper under Evid.R. 404(B) and Ohio case law.

In *Sims*, the court rejected the defendant's argument, holding that such inquiry is permissible under Evid.R. 405(A). The court stated:

" * * * In the case at bar * * * the evidence of prior arrests was not offered to prove the character of the accused. Both *Wagner v. State* [ (1926),

115 Ohio St. 136, 152 N.E. 28] and *State v. Cole* [ (1958), 107 Ohio App. 444, 8 O.O.2d 427, 155 N.E.2d 507] * * * forbid the use of prior arrests to impeach a defendant's testimony on cross-examination. The state did not refer to * * * [defendant's] prior arrest to impeach *his* testimony. The evidence of prior arrests was offered to impeach Mr. King's testimony that the appellant had a reputation for nonviolence. * * * *" *Id.* at 323–324, 3 OBR at 376–379, 445 N.E.2d at 238.

The *Sims* court noted that "* * * [t]his result would have been reached even prior to the enactment of the Rules of Evidence, under the authority of *State v. Elliott* (1971), 25 Ohio St.2d 249 [54 O.O.2d 371, 267 N.E.2d 806] [vacated on other grounds (1971), 408 U.S. 939, 92 S.Ct. 2872, 33 L.Ed.2d 761] * * *." Paragraph two of the syllabus in *Elliott, supra,* states:

"A character witness may be cross-examined as to the existence of reports of particular acts, vices, or associations of the person concerning whom he has testified which are inconsistent with the reputation attributed to him by the witness—not to establish the truth of the facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given his testimony. Such inconsistent testimony tends to show either that the witness is unfamiliar with the reputation concerning which he has testified, or that his standards of what constitutes good repute are unsound."

The United States Supreme Court has held, under such circumstances, that a prosecutor may question a character witness as to an arrest, whether or not it culminated in a conviction. *Michelson v. United States* (1948), 335 U.S. 469, 482, 69 S.Ct. 213, 221, 93 L.Ed. 168, 177.

As one commentator has noted, the practice of allowing such information to be brought before a jury "* * * possesses the potential for abuse. * * *" Giannelli, Ohio Evidence Manual (1982), Author's Comment § 405.05. Consequently, courts have placed two important limitations upon judicial discretion in permitting inquiries relating to such prior misconduct:

"* * * [F]irst, a requirement that the prosecution have some good-faith factual basis for the incidents inquired about * * *; and second, a requirement that the incidents inquired. about are relevant to the character traits involved at the trial. * * * *" *United States v. Wells* (C.A.5, 1976), 525 F.2d 974, 977.

In the present case, defendant contends that the motive of the prosecutor was not to impeach the witness, but to prejudice defendant by allegations of prior arrests. Defendant maintains that the prosecutor's bad faith is apparent based upon the fact that the character witness testified that he had only known defendant for a year while the arrests inquired about allegedly occurred in 1973, 1972, and 1969. Defendant argues that even had defendant

been convicted, Evid.R. 609 would not have permitted defendant's convictions to be used for impeachment purposes since they were too remote in time, clearly exceeding the ten-year time period.[1]

Courts have previously rejected the notion that the ten-year limitation under Evid.R. 609, concerning impeachment by prior conviction, should be construed in conjunction with Evid.R. 405(A). In *United States v. Edwards* (C.A.5, 1977), 549 F.2d 362, certiorari denied (1977), 434 U.S. 828, 98 S.Ct. 107, 54 L.Ed.2d 87, the court stated:

"In this case the trial judge exercised his discretion and allowed cross-examination as to * * * [defendant's] 1950 conviction and arrests, weighing the relevancy of the evidence as opposed to prejudice to the defendant. [Defendant] * * * argues that Rule 609(b) * * * should be read in conjunction with Rule 405(a) * * *. We cannot agree. Allowing evidence of convictions under Rule 609(b) is meant to impeach the witness with respect to *his* truth and veracity and also the limiting of the time for use of convictions allows for rehabilitation of that witness. But allowing cross-examination of character witnesses as to their having heard of prior convictions or arrests of a defendant shows whether he has knowledge of defendant's reputation and whether that knowledge influences his opinion in any way." *Id.* at 367.

We note, however, that under Evid.R. 403 a trial court may limit inquiry into acts which are remote if the court determines that the unfair prejudice likely to result substantially outweighs the probative value of such an inquiry.

■ In the present case, even assuming any error on the trial court in allowing inquiry into possible arrests of defendant, we find any such error to be harmless beyond a reasonable doubt. Assuming that the evidence was erroneous, the question becomes whether the jury convicted defendant based upon these other acts or upon the conduct alleged under the facts of this case. Based upon the overwhelming nature of the evidence against the accused, we find it unlikely that testimony regarding prior arrests contributed to defendant's conviction. See *State v. Lytle* (1976), 48 Ohio St.2d 391, 403–404, 2 O.O.3d 495, 501–502, 358 N.E.2d 623, 630.

Defendant's second assignment of error is not well taken and is overruled.

---

1. Evid.R. 609(B) provides, in pertinent part:
   "* * * Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction * * * unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. * * *"

Accordingly, defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY, P.J., and BROGAN, J., concur.

JAMES A. BROGAN, J., of the Second Appellate District, sitting by assignment.