JOURNAL ENTRY AND OPINION
{¶ 1} In this consolidated appeal, defendants-appellants Sadie Walker ("Walker") and Will Anderson ("Anderson") appeal from a decision of the Court of Common Pleas finding them guilty of rape, kidnapping, gross sexual imposition and intimidation.[1] After careful review, we affirm the decision of the trial court.
{¶ 2} This case arose from allegations that Anderson raped the eleven-year-old victim on August 15, 1999 at an abandoned house while Walker held her down.
{¶ 3} Anderson and Walker were indicted by the Cuyahoga County Grand Jury for one count of rape of a minor, in violation of R.C. 2907.02; one count of kidnapping, in violation of R.C. 2905.01; and one count of gross sexual imposition, in violation of R.C. 2907.05. In addition, Walker was charged with one count of intimidation of a witness, in violation of R.C. 2921.03. On February 26, 2001, the trial began.
{¶ 4} At trial, the victim testified that she was eleven years old at the time of the rape. She testified that she had met Walker a short time prior to the rape when Walker came to live at her mother's house. Walker was her stepsister.[2] Walker either slept on the couch or in her room. During her stay, they played basketball, walked around, and went places together. The victim then testified about the events leading to the incident at hand.
{¶ 5} The victim stated that on August 15, 1999, she went to a party at Tresha Walker's house. Tresha Walker is Sadie's Walker's sister. There were children and adults at this party, including Walker, Anderson, and Anderson's girlfriend, Christine "Duchie" Walker ("Duchie"). During the afternoon, the victim and Monique Walker, Tresha's daughter, left the party and went to an ice cream shop. The victim saw Anderson and Walker sitting in a van. Walker told the victim to get into the van and they drove to a deli. On the way there, Anderson asked the victim if she wanted to model for him. He explained to her that modeling was "when the girl and the boy are on the table having sex." The victim said no and was driven back to the party.
{¶ 6} Shortly after, Anderson returned to the party to pick up Duchie and her grandchildren. Duchie, the children, Walker, and the victim got into the van. Anderson dropped Duchie and the children off first. Anderson also went inside to use the bathroom. Walker moved from the back of the van to the front. The victim remained in the back. Anderson returned to the van. The victim stated that she thought Anderson was taking her and Walker home. During the drive, she fell asleep.
{¶ 7} The victim testified that she woke up at a white, abandoned, boarded-up house. Anderson carried her inside the house. Anderson and Walker got undressed and had sex in front of the victim. When they were finished, Walker told the victim that she could get some money if she "modeled" for Anderson. When the victim said no, Walker yanked on her clothing. Walker then pushed the victim onto the mattress, trapped her hands, and took off her panties and shoes. The victim was scared and began to cry. Walker covered her mouth and Anderson raped her. After Anderson was finished, the victim ran to the bathroom crying. Walker and Anderson threatened to kill her if she told anyone. Walker then gave the victim $30.00. Anderson then drove Walker and the victim home.
{¶ 8} The victim's mother let Walker and the victim inside the house. The mother was upset that it was so late. Walker told her that she had to wait for a friend to give her some money. The victim went to bed. The following morning, the victim went shopping with Walker. When she returned, she began to tell her mother what had happened the night before; however, she stopped when Walker overheard her and ran inside to accuse her of lying. The victim got upset and went outside.
{¶ 9} Later that evening, Walker left the house. After she left, the victim went back inside the house and told her mother everything. When Walker returned to the house, her mother got into an argument with her and told her to leave.
{¶ 10} Shortly thereafter, the victim went to see Dr. Leu and Dr. Feingold. She testified that she did not allow them to do physical examinations because she was scared. She did, eventually, allow a female nurse to do a physical exam. She testified that she made a police statement. She also made a statement to Anthony Boyd, a psychiatric social worker in the Family and Behavioral Health Department at Metrohealth's Clement Center.
{¶ 11} In addition to the victim, the State called the child's mother. She testified that the victim told her what happened, and that she was upset and crying as she recounted the events. She stated that she confronted Walker about her daughter's allegations and that Walker called her daughter a "damn liar." She told Walker to leave her house. She called the police the following day. She also made a statement to Children and Family Services. She also took her daughter to see Dr. Leu and Dr. Feingold.
{¶ 12} The State called Anthony Boyd, a social worker with Family and Behavioral Health Department at Metrohealth's Clement Center, who testified that the victim told him what happened on August 15, 1999. Mr. Boyd testified that the victim identified "Sadie" and "Will" as the violaters. Mr. Boyd referred the victim to Dr. James Leu for an examination.
{¶ 13} The State called Dr. James Leu. Dr. Leu had been the victim's doctor since infancy. He testified that the victim was very upset and angry when he first saw her on August 19, 1999. He testified that the victim would not allow him to perform an internal physical examination. He was able to observe however that there was no blood around her vagina and that her panties had no blood or discharge. Dr. Leu referred the victim to Dr. Feingold at Metrohealth's Alpha Clinic. Dr. Leu and Dr. Feingold conferred and Dr. Leu learned that the victim would not allow Dr. Feingold to do an internal physical examination either. On December 2, 1999, Dr. Leu attempted to examine the victim again; however, she would not allow him. However, she did allow a female nurse on Dr. Leu's staff to examine her and take specimens. All test results were negative.
{¶ 14} Dr. Mark Feingold also testified for the State. He testified that he first met the victim on September 3, 1999 as the result of a referral from Dr. Leu. The victim would not allow Dr. Feingold to do an internal physical examination; however, she described the sexual assault in detail. He opined that sexual abuse had occurred. He acknowledged that this was only a limited diagnosis since he was unable to perform an internal exam. On October 22, 1999, Dr. Feingold met with the victim again. She would still not allow him to perform an internal exam.
{¶ 15} Officer Sean Graham of the Cleveland Police Department testified that he responded to the call placed by the victim's mother. After taking the victim and her mother's statement, he advised the mother to take her daughter to the hospital and call the Cleveland Police Sex Crimes Unit.
{¶ 16} Finally, the State called Sgt. Allen Travis of the Cleveland Police's Sex Crime Unit. He testified that he interviewed the victim as part of his investigation. He testified that he drove the victim around to see if she could identify the house where the rape occurred, but that she was unable to. He testified that he tried to look for Anderson on several occasions but was unable to locate him. He was able to arrest Walker at a funeral.
{¶ 17} The defense presented four witnesses: Tresha Walker, Christine "Duchie" Walker, Monique Walker and Will Anderson himself. Tresha testified that she did not give a party in August 1999. She testified that she had a party in May 1999 which Walker, the victim and the victim's mother attended. She said that Anderson did not attend this party. She stated that she did not see the victim in August.
{¶ 18} Next, Duchie testified. She testified that she has lived with Anderson for 18 years and that they were never separated during this time. She testified that she met the victim for the first time on August 15, 1999 at Tresha's house. She stated that Anderson had dropped her off there and later came to pick her up. She testified that Anderson dropped her off at home and then drove Walker and the victim home. She stated that Anderson came "right back." (Tr. 757). She stated that Anderson and Walker did not have an affair. On cross-examination, Duchie testified that the victim's mother had told her about the victim's allegations. She also stated that Anderson would never do anything wrong. She then acknowledged that Anderson had been convicted of killing someone and a drug offense.
{¶ 19} Next, Monique Walker testified. She is twelve years old and a friend of the victim's. She testified that on August 15, 1999 she was at a woman named Tonya's house. She stated that she went with the victim to get ice cream and that she saw Anderson and Walker in a van in the parking lot. She stated that the victim went with Anderson and Walker to the store and then came back. She stated that Anderson later picked her, her cousins, Duchie, Walker and the victim up. Anderson dropped her, Duchie, and her cousins at Duchie's house. Anderson then drove Walker and the victim home. Monique testified that Anderson arrived home shortly thereafter — within 30 to 35 minutes.
{¶ 20} Finally, Anderson testified on his own behalf. Anderson testified that he drove Duchie to Tresha's house on the afternoon of August 15, 1999. He stated that Walker approached him in his van and asked for money. He testified that the victim walked by his car and asked Walker if she could go with her to get something to eat. Anderson testified that this was the first time he had met the victim and he drove her and Walker to a deli. Later in the day, Duchie called him and he left his house to pick her up at Tresha's. He drove Duchie and the children home. He then dropped Walker and the victim off at a friend of Walker's and went home. He testified that he was only gone for 15-20 minutes. He testified that he did not take Walker or the victim to any abandoned house and that he did not have sexual relations with Walker.
{¶ 21} On March 6, 2001, the jury found Anderson guilty of rape, kidnapping, and gross sexual imposition as charged in the indictment and not guilty as to the sexual motivation specification contained in the second count of the indictment. The jury also found Walker guilty of rape, kidnapping, gross sexual imposition and intimidation as charged in the indictment. Anderson and Walker appeal the verdicts. We will discuss Walker's eight assignments of error first.
 I. {¶ 22} THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO DISMISS AS THE EVIDENCE CLEARLY ESTABLISHED THAT APPELLANT'S RIGHT TO A SPEEDY TRIAL HAD BEEN VIOLATED.
 II. {¶ 23} THE JOURNAL ENTRY DENYING THE APPELLANT'S MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS FAILS TO ENUMERATE THE STATE OF OHIO'S COMPLIANCE WITH APPELLANT'S RIGHT TO A SPEEDY TRIAL.
{¶ 24} In her first and second assignment of error, Walker argues that the trial court should have dismissed the complaint. We disagree.
{¶ 25} On August 30, 1999, Walker was arrested on charges of rape and other offenses in Case No. CR-382052.[3] That case was dismissed without prejudice by the State on March 23, 2000. On August 23, 2000, Walker was re-arrested and re-indicted on charges of rape, kidnapping, gross sexual imposition and intimidation based on the same events in Case No. CR-394368. On October 13, 2000, Walker was released from jail on bond. On November 27, 2000, Walker filed a motion to dismiss the indictment on the basis that she was denied her right to a speedy trial. She claimed that the statutory time within which to bring her to trial had elapsed. The trial court denied Walker's motion on February 26, 2001.
{¶ 26} Pursuant to R.C. 2945.71(C)(2), a person charged with a felony must be brought to trial within 270 days of arrest or service of summons. R.C. 2945.72 delineates various grounds for extending the statutory time limits. Specifically, R.C. 2945.72(H) provides that the time within which an accused must be brought to trial may be extended for any continuances granted on behalf of the defendant.
{¶ 27} Here, Walker was arrested on August 30, 1999 and held in jail until the charge was dismissed on March 23, 2000. This time period counts as 205 days.[4] Walker was re-arrested on August 23, 2000 and held in jail until she made bond on October 13, 2000. This time period counts as 153 days.[5] Walker was on bond from October 13, 2000 until February 26, 2001 when the trial began. However, the time was tolled with the filing of Walker's motion to dismiss, filed November 27, 2000.[6]
The number of elapsed days from October 13, 2000 until November 27, 2000 is 45. Therefore, counting from the date of Walker's arrest on August 30, 1999 to the filing of the motion to dismiss on November 27, 2000, 403 speedy trial days had elapsed.
{¶ 28} Since Walker has established a prima facie case for dismissal, the State must demonstrate any extension of the time limit.State v. Howard (1991), 79 Ohio App.3d 705, 707. Here, the trial court granted three continuances at "the defendant's request" beginning October 21, 1999 continuing to December 29, 1999.[7] Thus, these 69 days are tolled from the speedy trial requirements. R.C. 2945.72(H). Also relevant to this determination is the time period between September 20, 2000 and November 27, 2000, when the trial court granted three continuances at "the defendant's request." Thus, an additional 68 days should be removed from the speedy trial calculation. In sum, 137 days should be removed from the 403 days calculated between Walker's original arrest and the filing of the motion to dismiss.
{¶ 29} The relevant time period during which the speedy trial statute was running was 266 days, close, but not over the 270 day limitation. Accordingly, the trial court properly denied Walker's motion to dismiss based upon the running of the time for speedy trial.
{¶ 30} Walker's first and second assignments of error are overruled.
 III. {¶ 31} THE TRIAL COURT ERRED IN PERMITTING THE ALLEGED VICTIM'S MOTHER TO TESTIFY WHAT THE VICTIM HAD TOLD HER PURSUANT TO THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE.
{¶ 32} In her third assignment of error, Walker claims that the trial court should not have permitted the victim's mother to testify to what the victim told her a day after the alleged incident occurred. We disagree.
{¶ 33} The mother's testimony as to what the victim told her occurred was admissible under the excited utterance exception to hearsay. The excited utterance exception allows for the admission of hearsay testimony if (1) the statement relates to a startling event, and (2) the statement is made under the stress of that event. Evid.R. 803(2); State v. Taylor (1993), 66 Ohio St.3d 295. The statement does not need to be strictly contemporaneous with the startling event. State v.Duncan (1978), 53 Ohio St.2d 215; State v. Spencer (June 6, 1996), Cuyahoga App. No. 69490; State v. Hughley (March 18, 1993), Cuyahoga App. No. 62070; State v. Williams (April 4, 1991), Cuyahoga App. No. 58327; State v. Negolfka (Nov. 19, 1987), Cuyahoga App. No. 52905. Indeed, Ohio courts have treated this rule liberally when the statement is made by an alleged child victim of sexual abuse, even when the utterance is delayed by several days. Ibid.
{¶ 34} Walker's third assignment of error is overruled.
 IV. {¶ 35} THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
{¶ 36} In her fourth assignment of error, Walker claims that her convictions are against the manifest weight of the evidence. We disagree.
{¶ 37} In determining whether a criminal conviction is against the manifest weight of the evidence, this court must examine the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses to determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. State v. Thompkins (1997),78 Ohio St.3d 380. This court should grant a new trial only in an exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230. If the jury's verdict is supported by sufficient competent and credible evidence going to each essential element of the crime charged, this court may not reverse. Id.
{¶ 38} Here, Walker was charged with rape, kidnapping, gross sexual imposition and intimidation. The offense of rape is defined by R.C. 2907.02, which provides, in pertinent part, that "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The offense of kidnapping is defined by R.C. 2905.01, which provides that "no person, by force, threat or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * to facilitate the commission of any felony * * * or * * * to engage in sexual activity with the victim against the victim's will." The offense of gross sexual imposition is defined by R.C. 2907.05 and provides that "no person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * the offender purposely compels the other person * * * to submit by force or threat of force." The offense of intimidation is defined by R.C. 2921.03 and provides that "no person, knowingly and by force, by unlawful threat of harm to any person * * * shall attempt to influence, intimidate, or hinder a * * * witness in the discharge of the person's duty."
{¶ 39} At trial, the jury heard the victim testify that Walker and Anderson took her to an abandoned building and had sexual relations in front of her. The jury heard the victim testify that Walker ordered the victim to remove her clothing, threw her on the bed, and held her hands and covered her mouth while Anderson raped her. The jury heard the victim testify that she was crying, upset and scared and that Walker threatened to kill her if she told anyone. The jury heard the victim's mother testify that the victim told her about the incident the following day and that she was upset and crying as she told her. The jury heard the social worker, Anthony Boyd, and Officer Graham and Sgt. Travis give the same account. The jury also heard Dr. Feingold and Dr. Leu testify that they had spoken with the victim, had been unable to perform physical examinations because the victim was scared, and that they both believed that sexual abuse had occurred.
{¶ 40} We find this to be substantial, competent, credible evidence upon which a jury could base its decision that Walker was guilty of rape, kidnapping, gross sexual imposition and intimidation beyond a reasonable doubt. Accordingly, we conclude that Walker's conviction for rape, kidnapping, gross sexual imposition and intimidation were not against the manifest weight of the evidence.
{¶ 41} Walker's fourth assignment of error is overruled.
 V. {¶ 42} THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
{¶ 43} In her fifth assignment of error, Walker argues that her trial counsel was deficient in various respects and that she was denied her constitutional right to the effective assistance of counsel. We disagree.
{¶ 44} In order for this court to reverse a conviction on the grounds of ineffective assistance of counsel, we must find that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. Strategic or tactical decisions made by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court.Strickland, supra.
{¶ 45} Here, Walker argues that her trial counsel performed deficiently by failing to give an opening statement, failing to cross-examine Dr. Feingold and relying too heavily on co-counsel. We disagree. Decisions regarding opening statements, the scope of cross-examination, and reliance on co-counsel are tactical decisions and will not be second-guessed by this Court. See State v. Tibbets (2001),92 Ohio St.3d 146, 166; State v. Mays (Sept. 13, 2001), Cuyahoga App. No. 78619. Furthermore, the record reflects that Walker's trial counsel did give an opening statement (Tr. 300-301) and that Dr. Feingold was extensively cross-examined by co-counsel.
{¶ 46} Finally, Walker argues that her counsel opened the door and allowed the State to introduce evidence of the bad character of co-defendant Anderson. We disagree. Walker's attorney did not question the witness Christine "Duchie" Walker, Anderson's attorney did. Thus, Walker's counsel did not open the door to admit character evidence.
{¶ 47} Walker's fifth assignment of error is overruled.
 VI. {¶ 48} THE TRIAL COURT MADE NUMEROUS ERRORS DURING THE TRIAL, THUS DEPRIVING THE APPELLANT OF HER RIGHT TO A FAIR TRIAL.
 VII. {¶ 49} THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO THE MISCONDUCT OF THE PROSECUTING ATTORNEY.
{¶ 50} In her sixth and seventh assignments of error, Walker claims that she was denied a fair trial when the trial court made erroneous evidentiary rulings and the State failed to make timely discovery.
{¶ 51} Walker first argues that the trial court should not have permitted Dr. Feingold to testify to what the victim told him. We disagree. This Court has consistently held that a young rape victim's statements to social workers, clinical therapists and other medical personnel are admissible under Evid.R. 803(4). State v. Grider (Feb. 10, 2000), Cuyahoga App. No. 75720; State v. Shepherd (July 1, 1993), Cuyahoga App. No. 62894; State v. Duke (Aug. 25, 1988), Cuyahoga App. No. 52604; State v. Cottrell (Feb. 19, 1987), Cuyahoga App. No. 51576;State v. Negolfka (Nov. 19, 1987), Cuyahoga App. No. 52905.
{¶ 52} Here, the victim was taken to Dr. Feingold for the purpose of a medical examination following the rape. Dr. Feingold was getting information from the victim for the purposes of medical diagnosis or treatment. The fact that he did not ultimately perform an internal examination does not negate this fact. Accordingly, the trial court properly allowed Dr. Feingold to testify regarding the victim's disclosures to him.
{¶ 53} Walker next argues that she was deprived her right to confront her accusers when the trial court permitted Dr. Feingold to testify about a study performed by Dr. Amy Beranson. We disagree. The record clearly shows that the trial court sustained defense counsel's objection to this line of questioning and did not allow Dr. Feingold to testify about Dr. Beranson's study. (Tr. 333-335).
{¶ 54} In her third claim, Walker argues that the trial court should not have permitted the victim's mother to testify to what the victim told her. Since we have already overruled this argument in Assignment of Error III, this argument fails.
{¶ 55} In her next claim, Walker argues that the trial court should not have allowed the defense witness, Christine "Duchie" Walker, to testify about her co-defendant's prior convictions for manslaughter and drug abuse. This argument is addressed fully in Anderson's third assignment of error, discussed later in this opinion, and will not be considered here.
{¶ 56} Next, Walker claims that she was denied a fair trial when the State withheld the study of Dr. Amy Beranson. Since the trial court disallowed all testimony regarding Dr. Beranson's study, this argument is moot.
{¶ 57} Finally, Walker claims that the State withheld, either up to or during the trial, the fact that the victim had been examined by Dr. Leu on December 2, 1999 and that he made a two-page diagnosis of this examination. Walker also claims that the trial court erred in allowing Dr. Leu to testify about this report. We disagree. The two-page report merely indicates that the victim tested negative for sexually transmitted diseases. Nothing in the report was material to the case. Moreover, the record shows that the trial court instructed the State that its questioning of Dr. Leu could relate to his examination of the victim only and not to what was in the report. (Tr. 333-335).
{¶ 58} Walker's sixth and seventh assignments of error are overruled.
 VIII. {¶ 59} CUMULATIVE ERRORS DEPRIVED THE APPELLANT OF HIS [SIC] CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.
{¶ 60} In her eighth assignment of error, Walker claims that she was denied due process of law as a result of cumulative errors which occurred during the course of trial. Specifically, Walker argues that the issues raised in her seven assignments of error, when taken as a whole, prejudiced her and resulted in an unfair trial. We disagree since we have found no merit in any of Walker's claims. The resolution of Walker's other assignments of error make this assignment superfluous.
{¶ 61} Walker's eighth assignment of error is overruled.
Judgment affirmed.
{¶ 62} ANDERSON'S APPEAL (Case No. 79695]
 I. {¶ 63} THE LOWER COURT ERRED WHEN IT GRANTED THE STATE'S MOTION IN LIMINE PRECLUDING APPELLANT FROM INTRODUCING EVIDENCE REGARDING PRIOR SEXUAL ABUSE OF THE ALLEGED VICTIM.
{¶ 64} In his first assignment of error, Anderson claims that he should have been permitted to offer evidence that the victim was previously sexually abused by an uncle. We disagree.
{¶ 65} Cross-examination of a rape victim concerning prior false allegations of sexual abuse may be permitted in the discretion of the trial court, if the defendant shows the allegations were clearly false and no sexual activity took place. State v. Boggs (1992),63 Ohio St.3d 418. If sexual activity, consensual or not, took place, the rape shield law would prohibit cross-examination on that issue. Id.
{¶ 66} Here, Anderson does not allege that the prior incident of sexual abuse was false. Rather, he claims that evidence of the prior abuse should have been admitted to impeach the victim's credibility and show that she was fabricating the allegation against him to gain social security benefits. Ohio's rape shield law specifically prohibits inquiry in this manner. Id. The defense is not entitled to question the victim about other sexual allegations unless they are proven untrue. Id. That is clearly not the case here. Accordingly, the trial court did not err in excluding evidence as to these accusations by the victim.
{¶ 67} Anderson's first assignment of error is overruled.
 II. {¶ 68} THE LOWER COURT ERRED BY ALLOWING INADMISSIBLE HEARSAY TESTIMONY TO BE INTRODUCED INTO EVIDENCE DURING APPELLANT'S TRIAL.
{¶ 69} In his second assignment of error, Anderson claims he was denied a fair trial when the trial court made erroneous evidentiary rulings. Specifically, Anderson claims that the trial court should not have permitted Dr. Feingold and the victim's mother to testify to what the victim told them. We disagree.
{¶ 70} This court has consistently held that a young rape victim's statements to social workers, clinical therapists and other medical personnel are admissible under Evid.R. 803(4). State v. Grider (Feb. 10, 2000), Cuyahoga App. No. 75720; State v. Shepherd (July 1, 1993), Cuyahoga App. No. 62894; State v. Duke (Aug. 25, 1988), Cuyahoga App. No. 52604; State v. Cottrell (Feb. 19, 1987), Cuyahoga App. No. 51576;State v. Negolfka (Nov. 19, 1987), Cuyahoga App. No. 52905. Here, Dr. Feingold treated and diagnosed the victim following the rape. His testimony was properly admitted.
{¶ 71} With regard to the testimony by the victim's mother, the courts in Ohio have been very liberal in allowing the admission of excited utterances made by child rape victims, even when that utterance is delayed by several days. State v. Taylor (1993), 66 Ohio St.3d 295;State v. Duncan (1978), 53 Ohio St.2d 215; State v. Spencer (June 6, 1996), Cuyahoga App. No. 69490; State v. Hughley (March 18, 1993), Cuyahoga App. No. 62070; State v. Williams (April 4, 1991), Cuyahoga App. No. 58327; State v. Negolfka (Nov. 19, 1987), Cuyahoga App. No. 52905. Here, the victim told her mother what happened the day after the incident occurred. Her testimony was properly admitted.
{¶ 72} Anderson's second assignment of error is overruled.
 III. {¶ 73} THE LOWER COURT ERRED BY ALLOWING INADMISSIBLE EVIDENCE PERTAINING TO APPELLANT'S PRIOR CRIMINAL RECORD THEREBY UNDULY PREJUDICING APPELLANT.
{¶ 74} In his third assignment of error, Anderson contends that he was denied a fair trial when the trial court allowed the State to ask the defense witness, Christine "Duchie" Walker, if she knew that he had prior convictions for manslaughter and drug abuse. We disagree.
{¶ 75} Duchie, Anderson's girlfriend of 18 years, was a defense witness. During her direct examination, Duchie testified that she and Anderson had been together for 18 years and during that time, they had never been separated. (Tr. 750). On cross-examination, the State, knowing that Duchie and Anderson had been separated for a considerable amount of time while Anderson served time in prison, challenged Duchie's representation that they had never been separated. Duchie adamantly maintained that she and Anderson had never been separated during their entire relationship. (Tr. 768-769). Duchie then testified that in the 18 years that she has known Anderson, "he would never do anything wrong." (Tr. 770, 779-780). At a side bar following this testimony, the trial court indicated that this testimony placed the character of Anderson at issue. Thus, the court permitted the State to inquire about Duchie's knowledge of Anderson's prior convictions and imprisonment.
{¶ 76} Under Evid.R. 405(A), the State may inquire into relevant specific instances of conduct to challenge the opinion of a character witness. See State v. Jackson (1991), 57 Ohio St.3d 29; State v. Broom
(1988), 40 Ohio St.3d 277, 290; State v. Sims (1981), 3 Ohio App.3d 321. Such evidence is admissible, not to establish the truth of the facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given her testimony. State v. Elliott (1971),25 Ohio St.2d 249 at paragraph two of syllabus.
{¶ 77} Here, during her testimony, Duchie gave an opinion praising Anderson's character. Thus, she became a character witness for Anderson and was properly quizzed about matters which were inconsistent with the characteristics she attributed to him. Clearly, prior convictions for drug abuse and manslaughter are inconsistent with Duchie's assertion that Anderson "would never do anything wrong." Accordingly, the trial court was within its discretion in permitting this line of inquiry.
{¶ 78} Anderson's third assignment of error is overruled.
 IV. {¶ 79} THE LOWER COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR MISTRIAL.
{¶ 80} In his fourth assignment of error, Anderson argues that he was denied a fair trial because the trial court allowed the State to question him about allegations of witness intimidation. We disagree.
{¶ 81} At trial, the State asked Anderson, over objection, if he had sent family members to the victim's house requesting that they not go forward with the case. (Tr. 860, 861). At a sidebar, following this testimony, defense counsel moved for a mistrial. The State responded by stating that it had a good-faith, factual belief that Anderson had sent people to the victim's house to influence testimony and/or stop the prosecution of the case. (Tr. 873-874).
{¶ 82} The Ohio Supreme Court has stated that "effective cross-examination often requires a tentative and probing approach to the witness' direct testimony, and this cannot always be done with hard proof in hand of every assumed fact." State v. Gillard (1988), 40 Ohio St.3d 226,231. Thus, the State may ask a question during cross-examination if a good-faith belief that a factual predicate for the question exists. Id.
{¶ 83} Here, the State's attorney filed an affidavit in her motion in opposition to Anderson's motion for mistrial in which she averred that she had a good-faith belief in pursuing that line of questioning. Moreover, the court gave a curative instruction to the jury to disregard any comments regarding Anderson's threatening of witnesses (Tr. 876) and that Anderson was not charged with intimidation. (Tr. 968).
{¶ 84} Anderson's fourth assignment of error is overruled.
 V. {¶ 85} THE LOWER COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A NEW TRIAL.
{¶ 86} In his fifth assignment of error, Anderson argues that he is entitled to a new trial because the State failed to disclose exculpatory evidence. We disagree.
{¶ 87} On the first day of trial, the State provided defense counsel with a summary of a report from Children and Family Services that included a statement allegedly made by the victim that her mother's boyfriend had raped her. The report, a Hotline Referral Form, contains the summary of a phone call with an anonymous caller on August 18, 1999.[8] This report identifies the offender as the "Paramour of Caretaker," and then identifies that person as "Doochie." On page 1, the narrative of the report reads:
 {¶ 88} Caller reports he wants custody of his daughter [* * *] age 16. Caller states [* * *] sister [the victim] age 12 disclosed to him today that she had been raped by her mother's boyfriend and the mother had done nothing about it. The child reported a friend of the mother (a "crack addict" per caller) and the mother's boyfriend took her to an abandoned building and the child recalled the man pulling his penis out of her as she woke up and then gave her 30 dollars to not tell. The mother's friend is named Sadie last name unknown and it is not known if the alleged perp. still has access to her.
{¶ 89} On page 2 of the report, typed in is the following:
 {¶ 90} Mother reportedly has not obtained medical or law enforcement intervention.
 {¶ 91} Child disclosed she was raped by mother's boyfriend a few days ago per referrant.
{¶ 92} We disagree that the report was exculpatory. First, the report identifies the offender as the "paramour of caretaker" and then identifies that person as "Doochie." Second, the facts contained in the report are as an anonymous caller understood them to be. At trial, the unequivocal testimony of the victim and other witnesses established that the victim has always identified Anderson and Walker as the perpetrators. Moreover, defense counsel had opportunity to question the victim about any other accusations she may have made and could have subpoenaed the victim's sister's father as a witness if he had wished to do so.
{¶ 93} Anderson's fifth assignment of error is overruled.
 VI. {¶ 94} APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
{¶ 95} In his sixth assignment of error, Anderson challenges the adequacy of the evidence presented at trial. Specifically, Anderson claims that the State failed to present sufficient evidence to support his convictions and that his convictions are against the manifest weight of the evidence. We disagree and find that an evaluation of the weight of the evidence is dispositive of both issues in this case.
{¶ 96} The sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence, an appellate's courts function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
{¶ 97} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Id. at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986),33 Ohio App.3d 339, 340.
{¶ 98} Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. State v. Roberts (Sept. 17, 1997) Lorain App. No. 96CA006462 at 4.
{¶ 99} Here, Anderson was convicted of rape, kidnapping and gross sexual imposition. The offense of rape is defined by R.C. 2907.02, which provides, in pertinent part, that "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The offense of kidnapping is defined by R.C. 2905.01, which provides that "no person, by force, threat or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * to facilitate the commission of any felony * * * or * * * to engage in sexual activity with the victim against the victim's will." The offense of gross sexual imposition is defined by R.C. 2907.05 and provides that no person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * the offender purposely compels the other person * * * to submit by force or threat of force.
{¶ 100} At trial, the victim testified that Anderson and Walker took her to an abandoned building and Anderson raped her while Walker covered her mouth and held her hands. She testified that she was upset, crying and scared. She testified that Anderson threatened to kill her and gave her $30.00 to not tell anyone. She testified that she told her sister and her mother. She gave the same account of the events to the social worker, Anthony Boyd, to Dr. Feingold, Dr. Leu, and to Officer Graham and Sgt. Travis. The victim's mother, confirmed that she had told her about the incident. She testified that the victim was upset and crying as she told her.
{¶ 101} Anderson claims that he had an alibi for the night of the sexual assault. He also argues that the State's witnesses were not credible and that the evidence did not support his convictions. We disagree. The jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments. See State v. Lawrence (Dec. 1, 1999) Lorain App. No. 98CA007118 at 13. Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting Anderson of rape, kidnapping and gross sexual imposition. Consequently, we conclude that Anderson's assertion that the State did not produce sufficient evidence to support a conviction, therefore, is also without merit. Accordingly, Anderson's sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendants' conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., and TERRENCE O'DONNELL, J., CONCUR.
[1] Only defendant Sadie Walker was convicted of intimidation.
[2] The victim's mother has two sons from another relationship. The father of these boys is Walker's father as well.
[3] There is an apparent dispute as to when the speedy trial computation should start. Walker's appellate attorney claims that Walker was originally arrested for these offenses on August 30, 1999 and was held continuously in jail until March 23, 2000. The State argues that Walker was arrested on October 3, 1999. Indeed, defendant's original motion to dismiss, filed November 27, 2000, uses the October 3, 1999 date for its speedy-trial computation.
[4] See State v. Smith (1981), 3 Ohio App.3d 115, 118 (day of arrest excluded from speedy-trial computation.)
[5] Pursuant to R.C. 2945.71(E), Walker's jail times ran three — to — one during this time since she was not being held in connection with any other cases.
[6] See R.C. 2945.72(E) and State v. Bickerstaff (1984),10 Ohio St.3d 62.
[7] This Court has previously held that with respect to the trial court's journal entries, the journal entry must identify the party to whom the continuance is chargeable. State v. Cripple (May 20, 1993), Cuyahoga App. No. 61773. The entry need only state the reason for the request when the trial court is acting sua sponte. Id.
[8] The anonymous caller was probably the victim's father or stepfather since the caller stated that he wanted custody of his daughter Bianca, who is the victim's sister.